# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **CHARLES O. MIX and wife**, | ) | Decatur County Chancery Court |
| **MARILYN V. MIX, and** | ) | No. 2447 |
| **CHARLES ALAN MIX**, | ) |  |
|  | ) |  |
| Plaintiffs/Appellants. | ) |  |
|  | ) |  |

# FILED

**October 6, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| VS. | ) | C.A. No. 02A01-9804-CH-00104 |
|  | ) |  |
| **RAY MILLER and wife,** | ) |  |
| **CLEAO MILLER, SANDRA MILLER** | ) |  |
| **SCOTT, and SHERRELL** | ) |  |
| **MILLER COLE,** | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

_____

From the Chancery Court of Decatur County at Decaturville.
**Honorable J. Walton West, Chancellor**

**Thomas F. Bloom**, Nashville, Tennessee
Attorney for Plaintiffs/Appellants.

**Andrew B. Frazier, Jr.**, Camden, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

The Mixes and the Millers are owners of adjacent pieces of real property. In this boundary line dispute, the trial court (1) determined the boundary line that divides the parties' properties, (2) awarded damages to the Millers for certain timber that had been removed from the disputed property by the Mixes, (3) denied the parties' motions to alter, modify, or amend its judgment or, in the alternative, for a new trial, (4) denied the Millers' motion for discretionary costs, and (5) denied the Mixes' motion to re-open the proof. For the reasons set forth below, we affirm in part, reverse in part, and remand the cause for further proceedings consistent with this opinion.

### Factual and Procedural History

R.S. Miller acquired a piece of real property from O.A. Ruff in 1917.[1] In 1937, R.S. Miller conveyed this property to Ray Miller, Guy Miller, and Raymond Miller in equal shares. Thereafter in 1958, Guy Miller transferred his one-third interest in this property to Raymond Miller. Upon the death of Raymond Miller, this same one-third interest passed to his daughter Sherrell Miller Cole. Additionally, in 1982, Ray Miller and his wife Cleao Miller conveyed their one-third interest in the property to their daughter Sandra Miller Scott.[2] In 1971, Charles O. and Marilyn Mix purchased two tracts of real property from Earl and Emma Smith that adjoin the property owned by the Miller family. The Smiths had previously purchased this property from J.M. and Alma Long in 1961. Both the Mix

deed and the Smith deed to this property included a description of the property that was based on a survey conducted by J.C. Neely in 1961.[3] In 1986, Charles O. and Marilyn Mix conveyed approximately nine acres of this property to their son Charles Alan Mix. The tract of land conveyed to Charles Alan Mix is located in the northeast corner of the Mix property and is adjacent to Miller property. After Charles Alan Mix began constructing a home on this tract of land, a dispute arose among the parties regarding the proper location of the boundary line that divides the Mix property and the Miller property. In order to resolve this dispute, the parties hired Eddie Coleman, a licensed surveyor, to survey the properties and determine the boundary line. By agreement of the parties, Mr. Coleman conducted this survey using the Miller deed. The Millers disagreed with the results obtained by Mr. Coleman's survey. Consequently, Sandra Miller Scott and Sherrell Miller Cole hired Robert Barrett, also a licensed surveyor, to conduct a second survey of the properties and determine the proper boundary line. Mr. Barrett then surveyed the property using the Mix deed as his primary document. This survey resulted in a proposed boundary line that is significantly different than the one proposed by Mr. Coleman.[4] Relying on the results of Mr. Coleman's survey, the Mixes subsequently removed timber from the disputed property.

Charles O. Mix, Marilyn V. Mix, and Charles Alan Mix ("Mixes") filed a complaint against Ray Miller, Cleao Miller, Sandra Miller Scott, and Sherrell Miller Cole ("Millers") asking the trial court to determine the true boundary line between the parties' properties. The Millers then filed an answer to the Mixes' complaint, a counter-claim against the Mixes,[5] and a third party complaint against Mr. Coleman.[6] The Millers' third party complaint against Mr. Coleman was subsequently dismissed by voluntary nonsuit. Additionally, the trial court entered a consent order establishing the boundary line between the property owned by Charles Alan Mix and the property owned by Ray and Cleao Miller. After a hearing on the remaining issues, the trial court issued a memorandum opinion ruling that the boundary line between the parties' properties was as reflected in Mr. Barrett's survey and that, to the extent that the Mixes had removed timber from the Millers' property, the Millers are entitled to

damages. With respect to the later portion of this ruling, the trial court subsequently entered an order valuing this timber at $735.05 and granting a judgment to the Millers in the amount of $1,474.10. Sandra Miller Scott and Sherrell Miller Cole then filed a motion seeking to recover certain expert witness fees and court reporting expenses as discretionary costs, which was denied by the trial court. The trial court also denied motions filed by both the Mixes and the Millers requesting that the trial court alter, modify, or amend its ruling or, in the alternative, that the trial court grant a new trial. Finally, Charles O. Mix, acting pro se, filed a motion asking the trial court to re-open the proof and allow him to present certain newly obtained field notes of J.C. Neely, who prepared the 1961 survey of the property on which the Mix deed was based. After a hearing on the matter, the trial court denied the motion to re-open the proof. This appeal followed.

### *Issues and Standard of Review*

On appeal, both the Mixes and the Millers challenge the trial court's ruling regarding the location of the boundary line that divides their properties. The Mixes also contend that the trial court erred in denying their motion to re-open the proof and consider certain field notes of Mr. Neely. Finally, the Millers argue on appeal that the trial court erred with respect to the amount of their damages and in denying their motion for discretionary costs. To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* T.R.A.P. 13(d). Accordingly, we may not reverse these findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

## Determination of Boundary Line

With respect to the parties' boundary line dispute, the trial court stated as follows:

It appears the surveyor Neely was rather meticulous in his courses and distances for his survey incorporated in the Smith and Mix deeds. Yet, according to the survey plats of Mr. Coleman and Mr. Barrett, the courses and distances do not correspond with certain concrete monuments found on the ground.

The surveyors Mr. Coleman and Mr. Barrett rely upon and at the same time do not rely upon various courses and distances in the Neely survey as contained in the Mixes deed description. Surveyor Barrett does not plat Neely's survey as beginning at point RR, a recognized beginning point of the Neely survey by both surveyor Barrett and surveyor Coleman. Surveyor Coleman appears to extend the initial line distance of 710 feet much further south from point AA as called for in the Neely survey. Both point AA on surveyor Coleman's survey and point RR on Barrett's survey appear to be identical locations identified by a concrete marker and the beginning point of Neely's survey.

When starting from the recognized beginning point of the Neely survey as recognized by both surveyors (point RR and point AA) and proceeding south 14 degrees east 710 feet and then west 537 feet as called for in the survey description, the Court is of the opinion that this point is much closer to point G as reflected on the Barrett survey where a concrete marker is located rather than at point B as reflected on the Coleman survey.

The Court finds that the Neely survey contained in the Mix deed description is more accurately reflected as shown on the Barrett survey. This conclusion is reached considering two presently existing concrete monuments and a fence which are referred to in the Neely survey. The Court is not unaware that surveyor Barrett does not begin his Neely survey at point RR on his survey plat which apparently is the agreed beginning point of the Neely survey. However, the Court notes that point G on the Barrett survey is marked by a concrete marker as called for in the Neely survey, and this concrete marker is also referred to in a 1986 deed from the Mixes to Charles Alan Mix and shown on the Coleman survey as point EE. There is no evidence the concrete marker has been moved and it was recognized and noted as a corner in the Mix to Charles Alan Mix deed. The conveyance to Charles Alan Mix from the Mixes was a portion of property acquired by them as included in their original deed containing the Neely survey description. The Mixes' deed description referring to the concrete marker at point G on the

Barrett survey is also acknowledged in the Mix deed as being the northwest corner of the Miller property.

The survey of Neely proceeds south from point G to point V as shown on the Barrett survey a distance of 1,210 feet with a wire fence, a portion of which was physically located. From point V on the Barrett survey the Mix line proceeds west 1,120 feet to a stake (not a concrete marker) and designated as point A by the Court on a copy of the Barrett survey attached to this opinion. From point A, the Mix line proceeds south 3 degrees east a distance of 2,900 feet to a stake marked as point B by the Court on the Barrett survey. The Neely survey refers only to a stake and not a concrete marker at this point. The Court is of the opinion that if concrete markers were in evidence at the time of the survey they would have been so noted as was done with other corners.

The Court finds that the survey by Neely as contained in the deed description to the Mixes was the only property conveyed by the Smiths to the Mixes. The Court further finds that surveyor Neely intended to run all lines with what he determined, rightly or wrongly, to be a common line with the Miller property.

The Millers' claim to the disputed property is based on a 1958 deed which allegedly encompasses the disputed property. This deed has as its origin the identical description as contained in a 1917 deed.

The Court is of the opinion the Miller original 1917 deed description does not correspond with the boundaries established by the surveyor Neely. The original Miller deed appears to correspond more closely to that as shown on the Coleman survey. This conclusion is reached primarily based on a 1978 Daniel survey which shows an existing fence leading to point A as reflected on Coleman's survey and point FF on Barrett's survey and being the northeast corner of Miller. At this northeast corner surveyor Daniel detected and observed an iron pin and old blazed white oak at what he determined to be Miller's corner with blazed trees running south. Proceeding west 106 poles from this northeast corner and using other distances in the deed does not correspond with the Neely survey, and the Miller deed would not encompass the disputed property utilizing this recognized northeast corner. Of course, the stumps referred to in the 1917 deed are no longer present to aid in locating the lines. The Court notes that the Daniel survey was used in settling a boundary dispute between the Millers and others. The fact remains that the Daniel survey reflects monuments on the ground which readily identify the Miller northeast corner and these monuments are considered more reliable than other sources used in attempting to establish the Miller boundary lines.

In conclusion the Court determines the Mixes own no more property than depicted by the surveyed description in their deed which reflects artificial monuments (concrete markers and fence). These monuments were readily viewable when the Mixes purchased the property from the

Smiths containing the Neely surveyed description and one marker was later recognized in the 1986 deed conveyance by them. An owner of land may be estopped to challenge boundaries by the recognition and adoption of a survey, Tenn. Juris. **Boundaries** § 19, and the Court further finds the Mixes are bound by the boundary lines as established in their deed as being the common boundary with the Millers. The Court has attached a copy of a portion of the Barrett survey reflecting the boundary lines. To the extent timber was cut from property of the defendants on their property, they are entitled to damages.

Both the Mixes and the Millers disagree with this portion of the trial court's ruling. The Mixes argue that the trial court should have adopted the results of Mr. Coleman's survey instead of the results of Mr. Barrett's survey. The Millers, however, contend that although the trial court was correct in adopting the results of Mr. Barrett's survey, it also should have held that the Mixes were estopped from denying the east-west boundary line contained in Mr. Coleman's survey.

We first address whether the trial court erred in using the survey of Mr. Barrett rather than the survey of Mr. Coleman to establish the boundary line that separates the parties' properties. When determining a boundary line that is in dispute, the court must look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property. *See Franks v. Burks*, 688 S.W.2d 435, 438 (Tenn. App. 1984); *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. App. 1980)(citing *Pritchard v. Rebori*, 186 S.W. 121 (Tenn. 1916); *Minor v. Belk*, 360 S.W.2d 477 (Tenn. App. 1962); *Doss v. Tennessee Prods. & Chem. Corp.*, 340 S.W.2d 923 (Tenn. App. 1960)). In its memorandum opinion, the trial court noted that the courses and distances contained in the Mix deed did not correspond to certain concrete monuments that were found on the parties' properties. Additionally, after considering the location of two concrete monuments and a fence that were found on the parties' properties, the trial court concluded that Mr. Barrett's survey more accurately reflects the results of the survey that Mr. Neely conducted in 1961. Finally, the trial court emphasized the existence of

monuments that identify the northeast corner of the Millers' property.

As stated above, the results of Mr. Coleman's survey and Mr. Barrett's survey are significantly different. This can be explained primarily by the fact that these surveys were conducted using different deeds. Mr. Coleman testified that his survey was based on the Miller deed and that he completely disregarded the Mix deed. Mr. Barrett, on the other hand, testified that although he relied primarily on the Mix deed when surveying the parties' properties, he also examined a number of other documents including the Miller deed. The trial court specifically questioned Mr. Coleman regarding the reasons that the Miller deed and his survey should be preferred over the Mix deed and Mr. Barrett's survey. Mr. Coleman responded that, in his opinion, certain monuments referred to in the Mix deed and relied upon by Mr. Barrett had been moved from their original positions. Mr. Barrett then explained that, although one of the monuments found on the parties' properties had obviously been moved, the locations of the remaining monuments were consistent with the language of the Mix deed. The trial court agreed with the position of Mr. Barrett, stating in its memorandum opinion as follows:

> [T]he Court notes that point G on the Barrett survey is marked by a concrete marker as called for in the Neely survey, and this concrete marker is also referred to in a 1986 deed from the Mixes to Charles Alan Mix and shown on the Coleman survey as point EE. There is no evidence the concrete marker has been moved and it was recognized and noted as a corner in the Mix to Charles Alan Mix deed.

In resolving a boundary line dispute, it is the role of the trier of fact to evaluate all of the evidence and assess the credibility of the witnesses. *See Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. App. 1983). A trial court's findings regarding the credibility of witnesses is binding on this Court unless they are contrary to the preponderance of the evidence. *See id.* at 90, 91 (citing *State ex rel. Balsinger v. Town of Madisonville*, 435 S.W.2d 803, 807 (Tenn. 1968)). Based on our review of the record in the instant case, we cannot say that the evidence preponderates against the trial court's conclusion that the Mix deed and Mr. Barrett's survey are preferable to the Miller deed and Mr.

Coleman's survey. Thus, to the extent that it established the boundary line according to Mr. Barrett's survey, we affirm the ruling of the trial court.

We next address whether the trial court was correct in its conclusion that "the Mixes own no more property than depicted by the surveyed description in their deed." As noted by the trial court, a land owner that has recognized and adopted a survey that was conducted with his or her consent may be estopped from challenging the boundaries set forth in the survey. *See* 5 Tenn. Jur. ***Boundaries*** § 19 (1983)(citing ***Chouning & Payne v. Simmons***, 24 Tenn. (5 Hum.) 297 (1844); ***Overton's Heirs v. Cannon***, 21 Tenn. (2 Hum.) 264 (1840); ***Whiteside v. Singleton***, 19 Tenn. (1 Meigs) 207 (1838); ***Singleton v. Whiteside's Lessee***, 13 Tenn. (5 Yer.) 18 (1833); ***M'Kean v. Tait***, 1 Tenn. (1 Overt.) 199 (1806)). It is also true, however, that a land owner may rely on deeds other than his or her own when attempting to prove the location of a disputed boundary line. ***See Griffin v. Underwood***, No. 02A01-9606-CH-00134, 1997 WL 147528, at *4 (Tenn. App. Mar. 31, 1997); ***Patterson v. T. J. Moss Tie Co.***, 330 S.W.2d 344, 351 (Tenn. App. 1959); ***Cusick v. Cutshaw***, 237 S.W.2d 563, 565-66 (Tenn. App. 1948). There is no evidence in the instant case suggesting that the Mixes recognized and adopted any survey that was based on the description contained in their deed. On the contrary, the Mixes repeatedly questioned the accuracy of Mr. Neely's 1961 survey of their property and the description contained in their deed. Thus, we disagree with the trial court's conclusion that the Mixes are estopped from challenging their own deed and from relying on the Miller deed. Accordingly, to the extent that the trial court limited the Mixes to the property described in their deed, the trial court's ruling is reversed. On remand, the trial court is instructed to enter an order adopting Mr. Barrett's survey without limitation.

### *Motion to Re-open Proof*

Subsequent to the issuance of the trial court's memorandum opinion, Mr. Mix filed a

motion asking the court to re-open the proof and consider certain newly obtained field notes prepared by Mr. Neely during his 1961 survey of the Mixes' property. According to Mr. Mix, these field notes support his position that Mr. Coleman's survey, rather than Mr. Barrett's survey, more accurately depicts the boundary line that divides the parties' properties. Mr. Mix then submitted to the trial court an affidavit signed by Edwin C. Townsend, Sr., the Mixes' former attorney, stating that these notes were not obtained prior to trial. According to Mr. Townsend, he had received from Mr. Neely's daughter some field notes but they were of no value because of their condition and because they did not appear to be all of Mr. Neely's notes. Mr. Townsend further testified that he made no inquiry regarding the location of Mr. Neely's original field notes for the Mix property. The trial court subsequently denied Mr. Mix's motion to re-open the proof.

Mr. Mix's motion to re-open the proof is essentially a motion for new trial based on newly obtained evidence. In order to justify granting a new trial on this basis, it must be shown that the moving party did not know of the new evidence prior to or during the trial and that the moving party could not have discovered the new evidence through the exercise of reasonable diligence. ***See, e.g., Seay v. City of Knoxville***, 654 S.W.2d 397, 399 (Tenn. App. 1983)(citations omitted). Both attorneys and clients have a duty to act with due diligence in securing evidence for trial. ***See, e.g., id.*** (citations omitted). In the instant case, the Mixes and their attorney were aware that Mr. Neely's daughter was in possession of Mr. Neely's field notes. In fact, Mr. Neely's daughter offered to supply the Mixes with these notes. Thus, we think that the newly obtained notes referred to in Mr. Mix's motion to re-open the proof could have been discovered through the exercise of reasonable diligence. The Mixes and their attorney made little if any effort, however, to obtain the notes pertinent to the Mix property until after the conclusion of the trial. Under such circumstances, we hold that trial court properly denied Mr. Mix's motion to re-open the proof.

***Damages***

Section 43-28-312 of the Tennessee Code Annotated, which governs the cutting of timber from the property of another, provides in pertinent part as follows:

> (a)(1) Civil liability for the negligent cutting of timber from the property of another is in an amount double that of the current market value of the timber.
> . . .
> (b) Civil liability for knowingly and intentionally cutting timber from the property of another is in an amount treble that of the current market value of the timber.

Tenn. Code Ann. § 43-28-12 (a), (b) (1993). The trial court in the instant case determined that the value of the timber removed by the Mixes from the disputed property was $737.05 and granted a judgment to the Millers in the amount of $1,474.10, which is double this value.

The Millers argue on appeal that the Mixes' removal of timber from the disputed property was intentional rather than negligent and that, accordingly, they are entitled to treble damages under section 43-28-312(b). We disagree. The word "intent" denotes "that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965). Thus, the important inquiry is not whether the Mixes intended the action, but whether the Mixes desired the consequences of the action or believed that these consequences were substantially certain to result from the action. The specific consequence prohibited by section 43-28-312 is the "cutting of timber from the property of another." Tenn. Code Ann. § 43-28-312 (1993). According to Mr. Mix, the parties agreed that no timber would be removed beyond a certain line until their properties were surveyed and the boundary line was determined. Consistent with this agreement, the Mixes did not remove any timber from this area until after Mr. Coleman surveyed the parties' properties. Mr. Mix testified that he removed the timber in reliance on the results of Mr. Coleman's survey. Thus, when the timber was removed, the Mixes believed that they, rather than the Millers, were the owners of the disputed property. There is no evidence in the record

suggesting that the Mixes acted with the intent to deprive the Millers of their property. Additionally, given that the Mixes relied on the survey results obtained by Mr. Coleman, we do not think that the Mixes believed that the consequence of their actions would be to deprive the Millers of their property. Under such circumstances, we think that the trial court properly characterized the Mixes' removal of the timber as merely negligent rather than intentional. Accordingly, we affirm the trial court's ruling that the Millers are entitled to damages equal to double that of the current market value of the timber pursuant to section 43-28-312(a)(1).

### *Discretionary Costs*

As noted above, Sandra Miller Scott and Sherrell Miller Cole filed a motion seeking a total of $8,114.90 in expert witness fees and court reporting expenses. The Millers contend on appeal that the trial court erred in denying this motion. Rule 54.04 of the Tennessee Rules of Civil Procedure, which authorizes the trial court to award discretionary costs, provides in pertinent part as follows:

> (2) Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs.

T.R.C.P. 54.04(2). Trial courts are afforded a great deal of discretion when considering whether to award costs. Accordingly, absent a clear abuse of discretion, appellate courts generally will not alter a trial court's ruling with respect to costs. *See, e.g., Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992)(citing *Lewis v. Bowers*, 392 S.W.2d 819, 823 (Tenn. 1965); *Mitchell v. Smith*, 779 S.W.2d 384, 392 (Tenn. App. 1989)). On appeal, the Millers characterize the Mixes' lawsuit as a "stubborn, unreasonable civil assault on their title to property . . . based on a false or

frivolous premise." Contrary to the Millers' characterization, we think that the instant case may be described as a good faith disagreement between neighbors based on the findings of two licensed, experienced surveyors. Under such circumstances, we find that the trial court did not abuse its discretion when denying the Millers' motion for discretionary costs. Thus, the trial court's ruling with respect to this matter is affirmed.

*Conclusion*

Based on the foregoing, the ruling of the trial court is affirmed in part, reversed in part, and remanded with instructions to enter an order adopting Mr. Barrett's survey in its entirety. The costs of this appeal are assessed one-half to the Mixes and one-half to the Millers, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)