IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 9, 2004 Session

## C. W. McMAHAN v. BARBARA JEAN GREENE

**Appeal from the Circuit Court for Carter County**
**No. 8588      Thomas J. Seeley, Jr., Judge**

_____

**No. E2004-01607-COA-R3-CV - FILED MARCH 30, 2005**

_____

This is a boundary line dispute. C. W. McMahan ("the plaintiff") and Barbara Jean Greene ("the defendant") owned adjacent tracts of land. Both parties received their respective tracts through a complicated chain of title. When a dispute arose as to the location of the boundary line, the plaintiff brought this action seeking to clear title. Following a bench trial, the trial court found for the plaintiff. The defendant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Mark S. Dugger, Elizabethton, Tennessee, for the appellant, Barbara Jean Greene.

John Rambo, Jonesborough, Tennessee, for the appellee, C. W. McMahan.

**OPINION**

I.

This suit involves a parcel of land ("the Property") situated in the Roan Mountain community of Carter County. The Property was acquired by William Gibbs and Nettie Gibbs in 1921. In 1955, they divided the Property into two tracts and devised one tract to each of their sons, retaining a life estate in both tracts. One tract ("the plaintiff's tract") was devised to Coyd Gibbs. This is the initial offshoot in the chain of title that eventually resulted in the conveyance to the plaintiff. The second tract was devised to Elmer[1] Gibbs. It is from this offshoot that the defendant ultimately obtained his

_____

[1]For ease of reference, we will periodically refer to Coyd Gibbs as "Coyd" and Elmer Gibbs as "Elmer." We intend no disrespect in doing so.

title.  The senior Gibbs believed that the Property was 50 acres in size.  Consequently the deed to each tract recited that it contained "25 acres more or less."

In Coyd's deed, the property is described, in relevant part, as

> [A] consideration of a division of a line between Coyd Gibbs and Elmer Gibbs.  BEGINNING in the Crab Orchard Iron Company Line on a rock on Bill Gibbs land thence withnthe [sic] depth of the hollow down the branch to the forks of the branch thence with the mill pond branch as it's [sic] meanders to Doe River thence West to the State road thence with Road North to Verter Jarretts Line and Bill Gibbs Line thence up the ridge to the top thence with said ridge to Powells Corner thence with Powells line to the Crab Orchard Iron Company line and corner to a white oak thence with the Company line to the beginning.  Continuing 25 acres more or less.

Elmer's deed contains the following description:

> [A] consideration of a division of a line Between Elmer Gibbs and Coyd Gibbs.  BEGINNING in the Crab Orchard Iron Company Line on a rock on Bill Gibbs land thence with the depth of the hollow down the branch to the forks of the branch thence with the mill pond branch as it meanders down to Doe River thence across the river due West to the State road thence with the road South to Crab Orchard Iron Company Line thence with the Crab Orchard Iron Company Line East back to the beginning containing 25 Acres more or less.

Although the descriptions of the common line separating the two tracts are virtually identical, the description in Elmer's deed makes no reference to a "white oak."

Both tracts of land were subsequently conveyed by several instruments before falling into the parties' possession.  Coyd Gibbs passed all of what would become the plaintiff's tract to Gary Scott Gibbs by warranty deed dated September 20, 1960.  Gary Scott Gibbs subsequently conveyed seven acres of the tract back to Coyd Gibbs by warranty deed dated October 6, 1981.  The seven acre parcel had a common corner with Elmer Gibbs' parcel and "thence with the line of Elmer Gibbs' 8.2 acre tract of land as it meanders."

Following Coyd Gibbs' death, his children – Robert Neal Gibbs and Gary Scott Gibbs – conveyed "7 acres, more or less" to Coyd's widow, Betty Virginia Gibbs, by quitclaim deed dated August 27, 1988.  In turn, by warranty deed executed on August 27, 1988, Betty Virginia Gibbs conveyed to the plaintiff this seven acre tract of land.  On this same date, Gary Scott Gibbs conveyed the 25 acres, which had originally been conveyed to him, to the plaintiff, but excepted those 7 acres conveyed by Betty Virginia Gibbs.

The chain of title for the defendant's deed is as follows: Elmer Gibbs died intestate in May, 1957. He was survived by his wife, Ina Gibbs, and five children. Prior to Elmer's death, Coyd Gibbs purchased the interest of three of the children. Therefore, at the time of Elmer's death, Coyd, who owned three-fifths of what would become the defendant's tract, owned the parcel as tenants in common with the two siblings, each of whom held a one-fifth interest. Elmer's widow claimed homestead and dower.

In 1962, Phillip Gibbs, one of the sons holding a one-fifth interest in the tract, brought a complaint seeking to partition the parcel and to determine the homestead and dower rights of Ina Gibbs. Mrs. Gibbs had expressed a desire to remain in her home, which was situated on the property. The court subsequently appointed commissioners to "allot and set apart to Ina Winter Gibbs out of the tract of land of which Elmer Gibbs died seized and [] possessed of, first a homestead of the value of one thousand dollars, and dower from the remainder of said tract." As a result of this order, E. K. Baker conducted a survey ("the Baker survey") of the tract.

The Commissioners filed their report on January 8, 1963. The report provides that they visited the property with Ina Gibbs, and that they

> from [the plat made by Baker] and natural boundaries, the residence of the late Elmer Gibbs was assigned to her as homestead, . . . and from the remainder of said property, dower was assigned to Ina Winters Biggs, and that the assignment of dower from the remainder of said lands was that which the said Ina Winter Gibbs identified to the Commissioners as tenable and adjacent to the homestead and outlying appurtenances, and she joined in and concurred in said assignment as being fair and equitable to all parties concerned.

Consequently, the decree, relying upon the Baker survey, created two tracts. One tract, devised to the two children and Coyd Gibbs, was identified as consisting of between 12 and 14 acres. The other tract – the homestead exemption granted to Ina Gibbs – consisted of approximately 3.4 acres. The description of the homestead and dower is as follows:

> BEGINNING at a large rock in the property line of the Crab Orchard Iron Company, and said rock being at the Southwest corner to the property of William Gibbs; thence with the William Gibbs line and along the meanders of a hollow in a northerly direction a distance of 600 feet, more or less, to a point in the center of the branch, and said point being at the junction of another branch which feeds into said hollow, from a southwesterly direction; thence south 45 deg. West a distance of 430 feet, more or less, to a point in the property line of said Crab Orchard Iron Company; thence with said line of Crab Orchard Iron Company three courses . . . to the BEGINNING, all

according to survey and plat of same made November 20, 1962 by E. K. Baker . . .

On May 8, 1974, Phillips Gibbs conveyed his one-fifth interest to Betty Gibbs Boone, which parcel was described as follows:

> BEGINNING at a large rock in the property line of the Crab Orchard Iron Company, and said rock being at the Southwest corner to the property of William Gibbs; thence with the William Gibbs line and along the meanders of a hollow in a Northerly direction a distance of 600 feet, more or less, to a point in the center of the branch, and said point being at the junction of another branch which feeds into said hollow, from a Southwesterly direction; thence South . . . to a point in the property line of said Crab Orchard Iron Company; thence with said line of Crab Orchard Iron Company three courses: . . . to the BEGINNING.

On April 10, 1990, Coyd Gibbs' widow conveyed to Betty Gibbs Boone the interest that Coyd Gibbs had received in the 1962 suit. Betty Gibbs Boone, in turn, conveyed the same to the defendant[2] by instrument dated July 24, 1990. None of the deeds after the deed to Elmer Gibbs from his parents – which deed had specifically referenced "25 acres more or less" – contained the acreage amount.

A dispute arose between the parties as to the boundary line. On September 17, 2002, the plaintiff filed the complaint in the instant case seeking a judgment confirming his clear title to the premises to remove any cloud from his title. He further sought possession of his entire premises and a permanent injunction so as to preclude the defendant from any interference with his property, person or family. He also sought a judgment for damage to his premises and legal expenses. The defendant filed her answer averring, among other things, that the plaintiff misidentified the boundary line between them and that the plaintiff did not possess more than 25 acres.

The matter was heard by the court without a jury. Each side proffered testimony of surveyors hired by the parties who had arrived at different conclusions as to the location of the boundary line. Steven Pierce surveyed the Property ("the Pierce survey") at the plaintiff's request. Pierce had already surveyed an adjacent parcel belonging to Wayne Holtsclaw. Relying on the Baker survey, Mr. Pierce conducted a survey of the defendant's land, which had been partitioned in the 1962 suit. His findings were consistent with those in the Baker survey. He also testified that the deed which purported to convey seven acres to the plaintiff in addition to the 25 previously conveyed was in error, as it was based on an erroneous tax map.

---

[2]The deed conveyed the land to both the defendant and her husband, David Greene. However, by instrument dated June 1, 1992, the defendant's husband conveyed his interest to her. Although David Greene was the subject of several allegations in the contempt petition, he is not a party to this action as he is not the owner of the relevant property.

The defendant proffered the testimony of Jonathan Lyons. Following his survey ("the Lyons survey") of both tracts, he arrived at a different conclusion as to the location of the boundary. When asked how he arrived at his conclusion, he stated

> [t]he property, according to the original deed, was supposed to been [sic] fifty acres, we found it to be 42.599, the original boundary of the property. It was supposed to have been equally divided, which led me to the intent or to follow the intent that it should have been closer to 21.3 plus or minus.

Lyons traced his line from the "depths of the hollow" and also used a plated rock limestone as a boundary marker.

The parties proffered several other witnesses at trial. The defendant presented the testimony of grandchildren of the original grantors who testified about what their father had told them about the boundary line and their recollection of the Property from when they were children. Gerald Holly, a property assessor, testified that the tax map for the defendant's tract in 1980 showed that there was 8.2 acres. However, in 1991, the tax map indicated that the acreage was 3.4 acres. The defendant testified that when she was inquiring about purchasing the tract from Betty Blaine, Ms. Blaine showed her a tax card indicating that the property she was purchasing was about 8.2 acres.

At the conclusion of the bench trial, the trial court issued its opinion from the bench and found for the plaintiff.

## II.

In rendering its opinion from the bench, the trial court stated the following:

> [B]y deeds November 3, 1955, William and Nettie Gibbs purportedly conveyed twenty-five acres to Elmer Gibbs and twenty-five acres to Coy – that's Coyd Gibbs . . . And [the deed] does say "twenty-five acres more or less". And we know this is mountain land and on many of the, certainly the older surveys that were not sophisticated as the surveys today, more or less could mean quite a bit more or less.
>
> In that division both of them do start at the same point, "BEGINNING in the Old Crab Orchard Iron Company line on a rock on Bill Gibbs' land, thence with the depth of the hollow, down the branch to the fork of the branch." Then it continues on together across the Doe River.
>
> It may be significant that in the Coyd Gibbs deed, as it's coming back to close, it says, "Thence with said ridge to Powell's corner, thence

with Powell's line to the Crab Orchard Iron Company line and corner to a white oak. Thence with the company line to the beginning." The white oak is not mentioned in the Elmer Gibbs deed. It does seem that the white oak is a natural monument of importance and it's unusual that it would not be mentioned in the Elmer Gibbs deed when it's mentioned prominently in the Coyd Gibbs deed.

Now, the Elmer Gibbs deed is the parent tract for the [defendant's] property and the Coyd Gibbs, at least [the deed to Coyd Gibbs], is the parent tract from which [the plaintiff's] property comes.

Elmer Gibbs died intestate May 5, 1957 leaving a widow, Ina Gibbs. Apparently in April, 1962 a partition suit was filed to sell the Elmer Gibbs property. Elmer Gibbs left several children and, of course, his wife Ina.

* * *

It's apparent that the Commissioner's [sic] appointed had E. K. Baker survey what was the Elmer Gibbs property and that's . . . dated November 20, 1962.

The Commissioners on December 28, 1962, set aside the homestead and dower for Mrs. Ina Gibbs and had Mr. Baker, at the Commissioner's request, draw a line across the tract he had surveyed November 20, 1962, setting aside homestead and dower for Ina Gibbs. And that description is in the Commissioner's Report and in the decree confirming Commissioner's Report and Order of Sale. And that division in setting aside of homestead and dower is shown on [E. K. Baker's survey].

It may be significant, and the Court thinks it is significant, that when we talk about the large right beginning corner and going to the depth of the hollow, Mr. Baker has apparently written on there "600 feet more or less."

Now, that homestead and dower tract and the description has been carried down and that same description was in the deed to first [the defendant and her husband] and later in the deed to [the defendant]. They used the exact same description.

It may have been that William and Nettie Greene [sic] intended in their original division to make a more or less equal division between

Elmer and Coyd.  You cannot ascertain that with any certainty from [the deed to Coyd Gibbs] and [the deed to Elmer Gibbs].  They simply say "twenty-five acres more or less."  And as I indicated, the oak tree natural monument, is in the Coyd Gibbs deed and not in the Elmer Gibbs deed.

Regardless of William and Nettie's intent, all that was set aside as homestead and dower for Ina Gibbs is what is shown on [E. K. Baker's survey] and what the Court confirmed to be Ina Gibbs' homestead and dower tract.  This is not the same as looking at a deed and it being ambiguous and going out and looking at natural monuments, artificial monuments, looking at all your deed calls and trying to come up with the intent of the grantor.

In this one, there is basically a Court Order and finding of what Ina Gibbs' homestead and dower rights consisted of.  And that, as we know now when surveyed out is 3.4 acres.

The original intent as far as the division by William and Nettie Gibbs is almost irrelevant.  [The defendant] cannot now claim more property than was deeded to her predecessor in title, Ina Gibbs.

There's obviously some confusion or has been some confusion as to the boundary line between the State of Tennessee and [the plaintiff] and that may or may not have been clarified to some extent.  There was the seven acres excepted out of [the plaintiff's] original deed [].  That same seven acres that was excepted out was conveyed back the [the plaintiff] and so he owns whatever it is he owns, whatever came down directly from Coyd Gibbs.

There may be, if in fact Mr. Baker used the wrong dividing line, a portion in there to which [the plaintiff] nor [the defendant] has a deed.  According to Mr. Steven Pierce's testimony, he is relatively certain that notwithstanding, that the acreage comes out in excess of twenty-five acres that [the plaintiff] owns down to the line that Mr. Pierce found to be the line and that hollow that may be a smaller hollow than the other one that Mr. Lyons thought should have been the property line.

The tax maps over the years have changed and changed from eight plus acres, I think, 8.2 acres on the [defendant's] property down to 3.4 acres.  Tax maps are better now that they used to be, but in years past they've been notoriously incorrect.

It may be that some of the Elmer Gibbs heirs could have some claim if there is a gap existing between the homestead and dower tract and what [the plaintiff] got. What we know is that in 1990, the tax maps did change and they changed basically as a result of the deed to Betty Gibbs Boone in all likelihood, and the property was replatted and changed from 8.2 acres to 3.4 acres.

Since that time [the plaintiff] has paid taxes on it. Apparently that area that sort of might constitute a gap, has not been utilized until somewhere between 1992 and '94 when [the plaintiff's son] had his mobile home placed in there. Certainly since that time it's been used by [the plaintiff] and the taxes have been paid by [the plaintiff].

It's not really, I don't believe, totally incumbent upon this Court at this time to declare that [the plaintiff] has clear title to that area where there may be a gap. He has asked the Court to clear – declare that he has clear title to it and I'm not sure if the proof has risen to the level that this Court could say he's got clear title to it.

Relying on Mr. Steven Pierce's survey it would indicate he's got clear title to it, but it is clear to the Court that [the defendant] cannot claim past the boundaries that were set for her predecessor in title, Mrs. Ina Gibbs.

I might mention in connection with that, when the homestead and dower were set aside for Mrs. Ina Gibbs, consistent with the report of the Commissioners and their direction of Mr. Baker, it says in the decree confirming Commissioners' Report and Order of Sale, that it had her concurrence in that division. She may or may not had [sic] an attorney, but it's clear even at that time by Mr. Baker's survey, that he felt like there was [sic] only seventeen acres in that whole tract and not twenty-five.

So the Court's going to find that [the defendant's] property is as set forth in the Baker Survey and not any greater than that. And that her line is defined by that hollow shown on that plat and also the plat of Mr. Steven Pierce. Tax the cost to [the defendant].

By order entered October 6, 2003, the trial court referred to the above-cited opinion as setting forth the relief to which the plaintiff was entitled. The trial court further stated that "[p]laintiff's property is confirmed as shown on the survey map of Steve G. Pierce . . . dated January 16, 2003 . . . and that [d]efendant's property is confirmed as set forth in the E. K. Baker survey for 3.4 acres and not greater than that."

-8-

III.

The defendant articulates her primary issue as whether the trial court erred when it held that the plaintiff satisfied his burden in establishing the subject boundary line. In particular, the defendant alleges that the trial court's reliance on the Baker survey and the Pierce survey was in error because (1) the plaintiff failed to satisfy his burden of proof since he was required to establish title by his own chain of title and not by the defendant's chain of title; (2) the landmarks used to mark the boundary line were wrong; (3) the trial court erred in failing to consider the intent of the original grantors to convey equal parcels; (4) the plaintiff is not entitled to more property than is contained in his deed; and (5) the trial court's reliance on the outcome of the 1962 partition suit was in error. The defendant further argued that the obligation of Betty Boone and Ina Gibbs to pay taxes on eight acres demonstrates that the parcel which was subsequently conveyed to her did, in fact, contain eight acres.

IV.

The general rule in determining a disputed boundary line is that the court

> must look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property.

*Mix v. Miller*, 27 S.W.3d 508, 513 (Tenn. Ct. App. 1999) (citations omitted). Since the question of where a boundary lies is an issue of fact, we review the trial court's judgment accordingly. The general standard of review for bench trials applies to boundary disputes. *See Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1999). We review the trial court's determination of the boundary line *de novo* upon the record before us, according that judgment a presumption of correctness. Tenn. R. App. P. 13(d). Accordingly, we will not disturb that judgment unless the evidence preponderates against it. *Id.*

When resolving a boundary line dispute, as in the case before us, it is incumbent upon the trier of fact to evaluate all evidence and assess the credibility of the witnesses. *Mix*, 27 S.W.3d at 514. As boundary line disputes are fact-intensive, the trial court is in the best position to assess the credibility of the witnesses. *Id.* Consequently, a trial court's credibility determinations are binding on this court unless the evidence preponderates against them. *Id.* This deference extends to a trial court's decision between competing surveys. *See Id.*

In light of the foregoing principles, we direct our discussion to those issues raised by the defendant.

V.

The defendant's issues center around the trial court's decision to rely upon the Baker and Pierce surveys rather than the Lyons survey. The Baker and Pierce surveys utilized the natural landmarks contained in the 1955 deed to draw the boundary line. As the two deeds from William Gibbs and his wife provide that the dividing line begins "in the Crab Orchard Iron Company Line on a rock on Bill Gibbs land thence with the depth of the hollow," both surveys determined that the beginning point was a rock found at the Crab Orchard Company property line. Lyons, however, relied on another hollow as the intended starting point, because, in his judgment, that starting point provided for a more equitable division of the Property. The trial court chose to rely on the Baker and Pierce surveys.

VI.

The defendant first contends that the plaintiff failed to satisfy his burden of proof. The defendant argues that it is incumbent upon the plaintiff to prove his title from his deeds rather than relying on defects or faults in the defendant's chain of title. In support of this argument, she relies upon ***Roberts v. Cantrell***, 559 S.W.2d 795, 797 (Tenn. Ct. App. 1977), for the proposition that a plaintiff must prove perfect title on his or her own property. In ***Roberts***, however, the trial court held that the plaintiffs failed to satisfy their burden of showing perfect title by relying solely on old deeds. ***Id.*** The surveyor neglected to consider the deeds of adjoining owners. ***Id.*** In the instant case, the plaintiff's surveyor considered the deeds of the adjoining owners. Further, the Baker survey even involved the input and concurrence from all relevant parties at that time. It is, in fact, proper for a landowner to rely on deeds other than his own in attempting to fix a boundary line in dispute. ***Mix***, 27 S.W.3d at 514.

The defendant also argues that the plaintiff cannot claim more land than was conveyed to him by deed. Consequently, a survey of land must match the calls of the deed. *See **Woodfolk v. Cornwell***, 38 Tenn. 272 (Tenn. 1858). In ***Woodfolk***, the question of fact concerned the location of the southwest corner of the grant of land to the plaintiff. ***Id.*** at 275. Consequently, the trial court held that an ex parte survey used to draw boundary lines cannot fix the boundary at points inconsistent with that which is called for in the deed. ***Id.*** at 276.

In the instant case, the defendant argues that the plaintiff failed to proffer any proof with respect to his title and deeds, but, instead, relied solely upon the survey of the defendant's property and the 1962 lawsuit. We disagree with the defendant's argument. The defendant suggests that the boundary line is as set forth in the original deeds to Elmer and Coyd Gibbs in 1955, and consequently the plaintiff cannot now rely upon a survey conducted of the defendant's property in 1963 to establish a new boundary line at variance with that in the original deeds. We do not find, however, that the boundary line is at variance with the original deeds. In ***Woodfolk***, the outcome of the case hinged on the location of the sugar tree referenced in the deed by which the boundary line was to be drawn. Here, the outcome hinged on the beginning point for the division of the original tract of land between Elmer and Coyd Gibbs.

VII.

The defendant's second issue with the trial court's reliance on the Pierce survey is that she disputes the location of the natural objects used to delineate the boundary line. In determining boundaries, the general rule, although not absolute, is that "resort is to be had, first, to natural objects or landmarks, because of their very permanent character, next, to artificial monuments or marks, then to boundary lines of adjacent owners, and then to courses and distances." *Pritchard v. Rebori*, 186 S.W. 121, 122 (Tenn. 1916).

There are several natural landmarks referred to in the original 1955 deeds, *e.g.*, a white oak, the branch of the forks, and a hollow. The white oak, however, is not mentioned in the original deed for the defendant's parent tract. The surveyors relied on these landmarks to construct their boundary lines. In the Baker survey, for instance, he found a small boulder on the Crab Orchard Iron Company line and determined that the depth of the hollow lead from this rock to the forks of the branch. The Pierce survey arrived at a similar conclusion. The Lyons survey, however, determined that the line began at a plated rock limestone, beyond which was an oak tree approximately 48 inches in diameter. He determined this was the head of the hollow and, therefore, the line extended to where he believed the forks of the branch to be. Since Lyons testified that the forks of the branch appear to have been moved from their original location, he used the point where the original forks of the creek converged. Pierce, on the other hand, relied on a pipe he located in the forks of the creek.

We find that the evidence does not preponderate against the trial court's finding that the landmarks, as employed in the Baker and Pierce surveys, best evince the boundary line. The call of the original deed for the plaintiff's tract provides that the boundary line runs from "the Crab Orchard Iron Company Line on a rock" to "the depth of the hollow down the branch to the forks of the branch" back up the ridge to Powells Corner, and then back to a white oak. Both Pierce and Baker found the same beginning point, and both located the forks of the branch approximately 600 feet north of the point of origin. From there, the line runs to the oak tree and then to the beginning.

Lyons, however, proposed a boundary line that would run from the oak to the forks of the branch. However, the relevant 1955 deeds do not provide for a call to the large oak between calls to the "rock on Bill Gibbs' land" and "thence with the depth of the hollow." It appears that Lyons' line does not match the call of the deed. Consequently, the evidence does not preponderate against the trial court's judgment.

VIII.

In addition to arguing that the Pierce survey relied on the wrong landmarks, the defendant also faults the trial court for relying on a survey that fails to reflect William and Nettie Gibbs' intent to divide the Property equally between their sons. The defendant argues that it can be "assumed" that the parents would have divided the Property evenly, and, therefore, they would have affixed the

boundary at a place that would permit an equal allotment of acreage to each son. This intent, so the defendant argues, is best reflected in the Lyons survey.

Lyons determined that the Property was not 50 acres but rather only 42.599 acres. Premised on the basis that William Gibbs and his wife intended that the tract be divided equally, Lyons highlighted where he believed the boundary line to be. His survey provides that the plaintiff's tract would be approximately 22.514 acres and the defendant's tract would be approximately 20.1 acres. Under the plaintiff's theory of where the boundary line lies, however, the defendant's tract would only consist of approximately 14.24 acres, whereas the plaintiff's tract would consist of approximately 27.759 acres. Consequently, the defendant argues that where the original deeds both provided for "25 acres, more or less," the trial court should have used the survey that resulted in a more equal division of the Property.

Although the defendant acknowledges that "the boundaries of a tract of land are not usually delineated by the quantity or acreage," she refers us to the principle that "where boundaries are in doubt, the quantity may become an important factor." *Slack v. Antwine*, No. W2000-00961-COA-R3-CV, 2001 WL 30527, at *5 (Tenn. Ct. App. W.S., filed January 11, 2001)(citing 12 Am.Jur.2d *Boundaries*, § 10).

We are not persuaded by this argument. While the deeds provide that each tract is "25 acres or less," the trial court opined that this may have not been accurate. This does not appear to us to be a case where quantity is useful in determining a boundary line. Consequently, the trial court found that the landmarks used to establish the boundary line were more reliable than the "assumed" intent of the original grantors.

We also agree with the trial court's judgment that the intent of the original grantors is nearly irrelevant since the defendant cannot claim more property than was deeded to her predecessor, Ina Gibbs. The 1962 suit set forth her homestead and dowry entitlements, and Mrs. Gibbs concurred in that result. She could not subsequently convey to the defendant more than what she had pursuant to the 1962 suit.

IX.

The defendant also argues that the trial court's judgment is in error because an owner cannot convey more than what he has and consequently, the plaintiff was not entitled to have anything more than what was called for in his deed. The first deed referenced, from 1981, conveyed seven acres from Gary Gibbs to Coyd Gibbs. The only witness who platted out this deed was Lyons. Pierce, however, deemed it an "erroneous deed" because it conveyed seven acres in addition to the twenty-five previously owned. When Lyons mapped out this 1981 deed, he determined that there was an overlap. Consequently, there is a gap between this boundary and the Baker survey. The defendant relies on the case of *Wattenbarger v. Powers*, 10 Tenn.App. 584, 589 (Tenn. Ct. App. 1928) for the proposition that a person can only enlarge a boundary beyond that which is conveyed in the deed by claiming the title by adverse possession or under color of title. Therefore, when read in conjunction

-12-

with the 1960 deed, which states that the seven acres have been conveyed away, it is clear that the original tract conveyed to Coyd Gibbs has been reunited.

With respect to this potential gap, the trial court stated

> [i]t seems to me the only people that could contest the title of [the plainitff] may be some of the Elmer Gibbs heirs. And if you look what was done in 1962 in the lawsuits, without complaint of the Elmer Gibbs heirs. They were all parties to that lawsuit. And you consider that in conjunction with the descriptions in the deed with [the plaintiff's] predecessor deed mentioning the white oak, and the Elmer Gibbs heirs' deed not mentioning the white oak, the preponderance of the evidence is that [the plaintiff] owns what's in that gap consistent with [the Pierce survey].

First, we note that the defendant is not entitled to the gap because, as stated by the trial court in its opinion from the bench, she is only entitled to that which was in her predecessor's possession. This gap does not fall within that parcel of land. As to whether or not the defendant has demonstrated that he possesses this parcel, we find that the evidence does not preponderate against the trial court's judgment.

X.

The defendant also challenges the trial court's reliance on the partition suit of 1962, in particular, that part of the judgment which established a homestead and dower right. In the 1962 suit, the court relied upon the Baker survey to determine that Ina Gibbs was entitled to a homestead and dower tract of 3.4 acres. The defendant argues that since the issue in that suit was to set aside a homestead and dower rights for Ina Gibbs, it cannot now be utilized to determine a boundary line.

The Tennessee Rules of Evidence provide an exception to the hearsay rule which allows for the admission into evidence of "judgments as proof of matters of personal or family history or boundaries, which matters were essential to the judgment." Tenn. R. Evid. 803(23). The defendant therefore seems to argue that although the judgment in the 1962 suit was admissible, the trial court's reliance upon the boundary line drawn in that suit was improper.

In conducting the 1962 survey, E.K. Baker walked the land with Ina Gibbs and she concurred in the boundaries drawn. He drew those boundaries with the purpose of determining Mrs. Gibbs' homestead and dower rights as well as the rights of the other interested parties. The argument that Mrs. Gibbs' entitlement and the boundary lines are not related must fail. The property owners seeking to partition this parcel of land in 1962 relied on those landmarks contained in the description of the Property by E.K. Baker instead of relying on the oak tree, and as Baker divided up the parcel and walked the boundary lines, the parties concurred in his conclusions. As we find that the evidence adduced in the 1962 suit provides more reliable evidence than the assumed intention of the

original grantors, we do not find the court erred in relying upon this case to determine the boundary line.

## XI.

The defendant's final issue concerns the fact that everyone believed that Betty Boone and Ina Gibbs had eight acres and that they paid taxes on eight acres for several years. The defendant acknowledges that it is undisputed that her property contains 3.4 acres. However, even though the defendant's predecessors in the chain of title possessed deeds that did not contain acreage, it was assumed that the defendant's predecessors possessed 8.2 acres.

This assumption on the part of Betty Boone and Ina Gibbs does not diminish the fact that there was a problem with the defendant's title. It is not simply, as the defendant contends, something that the plaintiff can utilize to his advantage. Rather, it simply stands for the proposition that the defendant's predecessors did not have eight acres, regardless of what they might have thought. Consequently, they could not convey to the defendant any more than they actually had.

## XII.

The judgment of the trial court is affirmed and this matter is remanded to the trial court for enforcement of its judgment and collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed against the appellant, Barbara Jean Greene.

_____
CHARLES D. SUSANO, JR., JUDGE