IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 1, 2019

## CITIZENS TRI-COUNTY BANK v. RUSSELL R. GOODMAN ET AL.

**Appeal from the Chancery Court for Grundy County**
**No. 6452       Jeffrey F. Stewart, Judge**

_____

### No. M2018-00958-COA-R3-CV
_____

This appeal involves a boundary dispute. Following a trial in the Grundy County Chancery Court, the chancellor held that the boundary between the parties would be the boundary depicted on a survey introduced by the Defendants. Having reviewed the record transmitted to us on appeal, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Jennifer Austin Mitchell, Dunlap, Tennessee, for the appellant, Citizens Tri-County Bank.

J. Harvey Cameron, Sr., Jasper, Tennessee, for the appellees, Russell R. Goodman, James Parker Goodman.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On August 26, 2015, Citizens Tri-County Bank ("the Bank") filed a complaint for declaratory judgment in the Grundy County Chancery Court seeking to establish the boundary between its property and property owned by Russell and James Goodman ("the Goodmans"). According to the Bank, the Goodmans had encroached on its land and were wrongfully claiming a portion of it. The Goodmans filed an answer denying the Bank's claims, and the case eventually went to trial in November 2017.

The area in conflict is wooded and consists of approximately 17 acres. Essentially, the dispute centers on competing claims to a mountain bluff located on the property. The Bank's claim to the disputed area arises out of its foreclosure on a commercial loan to H.B. Developers, LLC. The Goodmans' claim to the area arises out of a transfer by warranty deed from other family members. The proof showed that the Goodmans' property had been transferred among different family members several times over the years, and at the time of trial, both sides were able to trace their respective chains of title back over a hundred years. The Goodmans, however, were able to trace their title chain back the farthest.

As was borne out by trial testimony, the land taken in by the respective deeds of the parties creates a true overlap. The overlap is generally located in relation to a portion of the Bank's claimed western boundary and a portion of the Goodmans' claimed eastern boundary. Although some testimony about prior use of the disputed land was offered at trial, neither side pursued an adverse possession theory in asserting their respective rights to the property.

In an effort to support their claims to the disputed area, each side retained surveyors who testified at trial. The first surveyor to testify, Kurt Johnson, was offered by the Bank. Mr. Johnson testified that he had prepared a survey for the property purchased by H.B. Developers, LLC. According to Mr. Johnson, the deed pursuant to which the Bank acquired certain property included the disputed area at issue herein.

Mr. Johnson claimed that he had reviewed the Goodmans' deeds as part of his work and represented that, had the Goodmans' deeds caused any concern, it was something that he "would have brought . . . to somebody's attention at the time." However, he also testified that he remembered "having trouble with all of the deed lines below the bluff," and on cross-examination, he acknowledged that there was, in fact, a deed overlap involved in this case.

Another surveyor, Jason Barry, was called to testify at trial by the Goodmans. He generally testified as to how he and his father conducted a survey of the Goodmans' property by relying on deeds in the Goodmans' chain of title.[1] According to Mr. Barry, closure[2] with respect to the deed he utilized was "pretty close." Mr. Barry further testified that the property description in the Goodmans' deed was based on his survey. Mr. Barry did not dispute that the Bank's parent deed also covered the disputed area in question, and he specifically acknowledged, as Mr. Johnson had, that there was a deed overlap.

---

[1] Mr. Barry also testified that he had pulled deeds from the Bank's chain of title in connection with his survey work process.

[2] As Mr. Barry explained in his testimony, "Closure is where you have a description around a piece of property. It starts at a point and theoretically it should come back to the same exact point."

The disputed area was the subject of some disagreement between the current parties' predecessors in interest in the late 1950s, but no resolution was forthcoming at that time. James Goodman specifically testified to this matter at trial, noting that, when he was a child, his father and one of the Bank's predecessors in interest got into an "unfriendly" conversation about the "bluff mountain property." According to Mr. Goodman, neither his father nor the Bank's predecessor in title backed down from their respective positions regarding the disputed property.

At the conclusion of the trial proceedings, the case was taken under advisement, and thereafter, each side submitted proposed findings of fact and conclusions of law to the chancery court. On March 20, 2018, court was reconvened, and at that time, the chancellor orally ruled in favor of the Goodmans and accepted the survey they had introduced at trial. This oral ruling was later incorporated into the chancery court's "Final Order" entered on April 23, 2018. In its order, the chancery court found that the surveyors for both sides had been able to "locate with good precision the boundaries of their respective clients as described in their clients' chain-of-title deeds" and noted that "[p]ossession was not the controlling issue in the case" because neither side had pled adverse possession. In explaining its decision to adopt the Goodmans' proposed boundary line, the chancery court stated as follows in its incorporated oral ruling:

> [L]ooking at the age of the deeds [in the Goodmans' chain of title] and referring to the age of the deeds and the description, it goes back such a long period of time and, furthermore, not only the period of time, but the reference in the descriptions and the survey, how tight it was, how accurate it was.
>
>      . . . .
>
>      . . . [D]ue to the age and length of the registration of the deed and the boundary description that was so tight over all these many years, I would have to find in favor of the defendants[.]

Following the chancery court's adoption of the Goodmans' survey, the Bank timely appealed to this Court.

## DISCUSSION

The singular issue raised by the Bank on appeal is whether the chancery court erred in adopting the Goodmans' boundary survey. "The review of a decision rendered in a boundary dispute is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). The evidence

3

does not preponderate against a trial court's findings of fact unless it supports another finding with greater convincing effect. *Id.*

In order to resolve a boundary dispute, a trial court must evaluate all of the evidence and assess the credibility of the witnesses. *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999). As an appellate court, we afford considerable deference to the trial court's credibility findings and the weight to be given to testimony. *Jackson v. Bownas*, No. E2004-01893-COA-R3-CV, 2005 WL 1457752, at *6 (Tenn. Ct. App. June 21, 2005). This deference extends to boundary disputes where the trial court is required to choose between two competing surveys. *Id.*

In this case, the chancery court did not articulate any particular qualms about either surveyor who testified at trial. In fact, the chancery court did not question that the parties' surveyors had accurately located the boundaries of their respective clients as established in each side's chain of title. The problem here, of course, lies in the fact that each side's deed encompasses the wooded area in dispute. As acknowledged by both Mr. Johnson and Mr. Barry, there is indeed an overlap in claimed land.

An examination of the chancellor's ruling indicates that he resolved this conflict and adopted the Goodmans' survey due to the fact that the Goodmans' chain of title was traceable over a longer period of time than the Bank's and that the boundary description had been "so tight over all these many years." The proof supports the trial court's finding that the Goodmans' established chain of title goes back farther than that of the Bank's,[3] and given the acknowledged conflict and overlap presented by the parties' respective deeds, we find no basis to disturb the chancery court's ruling. *See Slack v. Antwine*, No. W2000-00961-COA-R3-CV, 2001 WL 30527, at *5 (Tenn. Ct. App. Jan. 11, 2001) ("Where there is a conflict, an older grant or deed will prevail over a younger grant or deed.").

---

[3] Although the proof established that the Goodmans' chain of title was traceable farther back than that of the Bank's, the chancery court also took note of the fact that there was likely a "continuity of ownership" within one particular family during an apparent 1869-1905 gap in the chain of title:

> Defendants had established their title chain 1905 through the present through their exhibits, establishing also, as Exhibit 10 a deed executed in 1865 and recorded in 1869, which older deed is referred to for property description in later deeds in Defendant's title chain; further, said 1865/1869 deed referred to the property granted therein as being the old Peter Moran homeplace, and Defendant's Exhibit 13, 1905 deed in their chain of title having as a party Dan Moran, guardian for James Moran, suggesting the likely continuity of ownership within the Moran family during 1869-1905 gap in title chain.

4

## CONCLUSION

For the foregoing reasons, the judgment of the chancery court is affirmed and the case is remanded for such further proceedings as may be necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE