# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 17, 2011 Session

## GARRETT RITTENBERRY ET AL. v. KEVIN PENNELL ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2008C-183      Tom E. Gray, Chancellor**

---

**No. M2010-01244-COA-R3-CV - Filed April 29, 2011**

---

In this boundary dispute, the defendant property owners argue that the trial court erred in its reliance on the survey of the plaintiffs' expert and in concluding that the road in front of the plaintiffs' property is a public county road. We have determined that the evidence does not preponderate against the trial court's decision to credit the survey, but that the trial court erred in concluding that the disputed part of the road was a public county road.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Philip Clark Kelly, Gallatin, Tennessee, for the appellants, Kevin Pennell and Lana Pennell.

Christopher D. Cravens, Nashville, Tennessee, for the appellees, Garrett Rittenberry and Alma Rittenberry.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

This is a boundary line dispute between Garrett and Alma Rittenberry and Kevin and Lana Pennell, two couples who own adjoining pieces of property in Sumner County. The Rittenberry property and the Pennell property were originally part of a larger tract owned by P.E. Wilson, who sold a 178-acre tract to John and Mildred Sullivan in August 1959. In August 1960, John and Mildred Sullivan conveyed 78 acres to John's brother Rollin Sullivan. The next year, Rollin gave John a 30-foot easement on his property in order to move a

portion of the road farther onto Rollin's side to allow John to have a larger front yard for his new house. Surveys of the brothers' adjoining properties were done by Odo E. Rhodes.

In 1974, Jack Greene bought Rollin Sullivan's remaining property. In 1981, Greene sold off a half-acre tract to Forrest Wayne Douglas; in the deed, Greene expressly reserved an ingress-egress easement across the property to give him access to his existing driveway. By deed dated December 17, 2003, Jack Greene and his ex-wife conveyed their 78-acre tract (minus the Douglas tract) to the Pennells. The Pennells purchased the Douglas tract in 2005.

After John Sullivan's death, his widow married Carl Greene. Mildred Sullivan Greene and Carl Greene sold their property to Walter Houston and his wife, who sold it to the Rittenberrys by deed dated September 9, 2005.

The Rittenberry property is bounded to the east by the Pennell property, which also extends to the south of the Rittenberry property. Tinnin Road runs roughly north-south and is to the west of the Rittenberry property. Ridge Hill Road, which runs roughly east-west, begins at Tinnin Road and continues eastward to the south of the Rittenberry property. Both the Rittenberrys and the Pennells have street addresses on Ridge Hill Road.

In July 2008, the Rittenberrys initiated this declaratory judgment action against the Pennells after the Pennells objected to and interfered with the Rittenberrys' use of a driveway that the Rittenberrys constructed to connect their house to Ridge Hill Road. As stated in the complaint, the Rittenberrys and the Pennells are both successors in interest to signatories to a 1985 joint road maintenance agreement signed by owners of real property along Ridge Hill Road, which was a private roadway at that time. In 1992, the complaint alleges, the portion of Ridge Hill Road in Sumner County, including the portion adjacent to the Rittenberry property, was designated as a public road. The Rittenberrys sought an order declaring them the lawful owners of the disputed strip of real property along Ridge Hill Road.

In their answer, the Pennells disputed the accuracy of the property description in the Rittenberrys' warranty deed and the accuracy of a survey performed by Tommy E. Walker at the Rittenberrys' request. According to the Pennells, Ridge Hill Road did provide access to Alex Houston, the Rittenberrys' predecessor in title, but not to the portion of the Houston property sold to the Rittenberrys; and Mr. Houston's participation in the joint maintenance agreement related to another portion of Ridge Hill Road, not to the area in dispute. The Pennells also asserted that Sumner County did not recognize the disputed part of the road as a public road and that they pay taxes on that property. The Pennells counterclaimed for a declaration that the Rittenberrys had no right to use the private drive located on the Pennells' property.

A bench trial was held on December 18, 2009. Mr. Rittenberry introduced into evidence a copy of their warranty deed, which includes a statement that the eastern boundary of the property extended "to a point in the said margin of the private road [Foothills Drive]."[1] Mr. Rittenberry stated that the property was not surveyed at the time when he and his wife bought the property in 2005. The deed's property description comes from a 1970 survey.

After Mr. Pennell disputed the location of Mr. Rittenberry's driveway, Mr. Rittenberry hired Tommy Walker to perform a survey for him. Mr. Rittenberry also introduced into evidence the May 1985 joint maintenance agreement signed by Mr. Greene and Mr. Houston, and Sumner County Highway Commission minutes from June 4, 1985, in which the commission voted that "Ridge Hill Road (Sumner County portion from Davidson County line back to end which is the Greene property[)] be designated as a Class C County Road." On cross-examination, Mr. Rittenberry acknowledged that Mr. Houston had not signed the document conveying to the county land fronting on Ridge Hill Road in order to give the county a 50-foot right-of-way.

The next witness called by Mr. Rittenberry was Anthony Bollinger, a professional land surveyor who worked for Tommy Walker and Associates. He testified about the boundary survey he and Mr. Walker produced concerning the Rittenberry property in January 2008, which was introduced into evidence. Mr. Bollinger stated that he had been on the Rittenberry property eight to ten times in order to perform the field work for the survey. He testified that they obtained "all the information we could–recorded deeds, old surveys, line agreement surveys–everything that we could possibly get our hands on, went to the field ... and started trying to find monumentation that would indicate where those property lines were."

Mr. Bollinger gave detailed testimony about what he did on the Rittenberry property. He began by locating monumentation called for in the Rittenberry deed and adjoining deeds. As to the location of the line separating the Rittenberry and Pennell properties (the eastern boundary of the Rittenberry property), Mr. Bollinger stated: "[W]e knew that there was some discrepancy in that line because Mr. Pennell's deed had a very bad closure bust in it." He explained that a "closure bust" refers to a situation when, following the survey descriptions around the property, one does not come back to the beginning point; in other words, the survey does not close. Mr. Bollinger described the Pennell deed as being "grossly in error" and more than 500 feet from closing. The Rittenberry deed was within 16 and a half feet of closing.

---

[1]Foothills Drive later became Ridge Hill Road.

Mr. Bollinger also testified about an old pin he located along the eastern boundary line, which reflected a 1981 line agreement between Mr. Houston and Mr. Greene referenced on a survey by Howard George in 1981. A copy of the George survey was admitted into evidence. Mr. Bollinger opined that this marker did not indicate the lower boundary of the Rittenberry property because the Rittenberry deed reads from the margin of the road.

Mr. Bollinger also reviewed a June 1999 boundary survey done by Rocky Montoya of a piece of property adjoining the Rittenberry property on the west and north. This survey, which was introduced into evidence, showed a fence post at the southeastern corner of the Rittenberry property. Mr. Bollinger found the original hole and remnants from the fence post. In addition, the distances given in a worksheet from Mr. Montoya's office lined up to within 1.2 inches of the fence post measurement. Mr. Bollinger explained that this find reaffirmed that there was a corner marker there at one time: "Because you're talking about a line 2600 feet. When you project it through that existing iron pin [at the southwestern corner] that was on that line, it hit within 1.2 inches of what Mr. Montoya said, which is well within tolerance." Mr. Bollinger stated that it was his professional opinion that Mr. Rittenberry's property extended to the margin of Ridge Hill Road for 298.73 feet.

On cross-examination, Mr. Bollinger testified that he followed standard practice in performing the boundary survey and that he did not go back to see the common ownership between the two pieces of property in the past.

Tommy Walker, a professional land surveyor, also testified about his survey. He also stated that he was present at the deposition of Mr. Montoya and that it was his understanding that Mr. Montoya had done an open-ended traverse. He would not consider such a traverse to be reliable unless he closed it back.

Mr. Walker testified that the Rittenberry deed began and came back down to the margin of Ridge Hill Road. He also discussed the significance of an old fence line, which he could not see at the time of the survey because of the overgrowth, but which he saw after the survey was done after Mr. Pennell had done some clearing. Mr. Walker stated that the old fence line was "generally along the margin of Ridge Hill Road and it lines upon where this old fence post was supposed to be that was shown on Mr. Montoya's '99 survey." He explained that "[o]ld fence lines are–unless they're called for in a deed are generally not property lines, but they do indicate possession." Mr. Walker considered this fence line an indication of where the property line was.

According to Mr. Walker, he and Mr. Bollinger placed an iron pin to mark the southeastern corner of the Rittenberry property. He explained how they determined the location of this pin: "[A]ccording to our mathematical computations and the worksheet we

had that was associated with Mr. Montoya's survey, our iron pin actually hit in that old fence corner hole that he found–that Mr. Bollinger found when he was doing his initial research and property owner search out there." The new pin is located along the margin of Ridge Hill Road.

Mr. Walker testified that surveyors Richard Graves and Jackie Dillehay had done survey work on the Pennell property but he never saw a report from them. Mr. Walker stated that he would not express an opinion regarding the boundaries of a piece of property unless he had done a complete boundary survey. On a boundary survey, Mr. Walker testified, the surveyor certifies "that this property closes to a certain tolerance." He had never seen a boundary survey of the Pennell property. Mr. Walker had heard Mr. Montoya's deposition testimony in which he criticized some of Mr. Walker's calls on the Rittenberry survey, particularly the call along the margin of Ridge Hill Road; but Mr. Walker testified that he believed his calls were justified. Because of the closure issues described by Mr. Bollinger, Mr. Walker considered the Pennell deed "mathematically unreliable."

The Pennells' first witness was Rollin Sullivan, who at one time owned the Pennell property. Rollin Sullivan's deed was admitted into evidence. In 1961, Rollin granted John Sullivan a perpetual easement across Rollin's property. On cross-examination, Rollin Sullivan testified that he did not know a Mr. Houston (who sold the Rittenberrys their property), where the Rittenberry property was, or whether Ridge Hill Road was a public road.

Rocky Montoya, a professional land surveyor, testified about the survey he did in 1999 when Mr. Houston sold a piece of property to the Kruegers. The tract in question adjoins the Rittenberry property on the west and the north. Mr. Montoya testified that his survey also shows the Rittenberry property but does not show any calls on that property because it was not part of the surveyed property. As to the fence post his survey shows in the southeastern corner of the Rittenberry property, Mr. Montoya stated: "We probably located the fence line up in this location [on the eastern side of the Rittenberry tract] so that when I computed it, I could compute the 50 foot to the left of that to leave that particular opening." According to Mr. Montoya, he was concerned that what is now the Rittenberry tract (which Mr. Houston still owned at that time) would be landlocked because it began after the county road ended. He advised Mr. Houston of this concern, but Mr. Houston told him to proceed.

Mr. Montoya testified that Mr. Pennell hired him to do a property line survey based on the old property description. He started at the bridge at Tinnin Road and traced Ridge Hill Road based upon the Pennell deed, the Houston deed, and prior deeds. According to Mr. Montoya's calculations, at the boundary line between the Pennell and Rittenberry properties, the Rittenberry property begins 72 feet from the road.

On cross-examination, Mr. Montoya acknowledged that his surveyor certificate seal was not on the property line survey drawings he did for Mr. Pennell and that state law required a surveyor certificate on the survey. His name was not on the drawings. When asked as to the category of his survey, Mr. Montoya stated that it was "an opening survey which would not probably be in a category." He admitted that he could not certify as to the ratio precision of this survey because it was open-ended. Mr. Montoya further testified as to what he would have put on the survey if he had certified it:

A. I would probably just certify that this is a line certificate with all the noted information on it. Other than that, I wouldn't classify it as an actual boundary survey for any purpose of determining deeds or descriptions.

Q. Or property lines. Or ownership of property. Is that correct?

A. That's correct, from that standpoint.

Mr. Montoya acknowledged that he had not performed a boundary survey on the Rittenberry property or the Pennell property.

Marjorie Greene, a predecessor owner to the Pennells, testified that she had lived there from 1981 through about 1998. When she and her husband moved there, Ridge Hill Road was dirt and gravel. In 1985, according to Ms. Greene, her husband went to the county to see if the county would keep up the road and pave it if the property owners gave the county the right-of-way. The Pennells' attorney showed Ms. Greene some photographs and asked her to identify where the road ended and became a private road leading back to her land. Ms. Greene stated that it had been a long time since she had been to the property, but she indicated where she thought the "hump" was where the county road ended. Ms. Greene testified that the county agreed to pave the Greenes' private drive when they paved Ridge Hill Road "since [Mr. Greene] was good enough to give some land and stuff," but that their driveway remained a private road.

Steven Ward from the Sumner County Assessor's office testified that he worked on drafting the tax maps based on the deed descriptions. Mr. Ward would type the deed calls into a computer; he was not a surveyor. According to the county tax maps, the disputed property near Ridge Hill Road belonged to the Pennells, who had been paying taxes on it since 2003. The disputed road was treated as a private road on the county tax maps. Mr. Ward acknowledged that it was not up the tax assessor's office to determine what roads are public. Moreover, he had not seen a boundary survey of the Pennell property and would express no opinion on the boundary line dispute at issue.

-6-

Kevin Pennell was the last witness. He testified that when he moved onto what is now the Pennell property in 1994 or 1995 as a renter, the area where the private driveway began was obstructed by overgrowth. After he moved onto the property, Mr. Pennell did bush-hogging and cut trees to get the property into better shape. June Greene, Jack Greene's wife, drew the basic property lines for him according to the tax maps. According to Mr. Pennell, the Greenes thought they owned the property across the road/driveway, but they did not know exactly where the property line was. Mr. Pennell never met Mr. Houston, who owned the adjoining property. Because he owned other property, Mr. Pennell surmised, Mr. Houston did not need to use the driveway/road to access what became the Rittenberry property.

Mr. Pennell testified that he bought the Douglas property[2] to prevent any problems with his access through the Douglas tract. He stated that the septic system for the Douglas house ran across the creek and into the land the Rittenberrys were using for their driveway and claiming as theirs.

Mr. Pennell stated that no survey was done when he bought the property from the Greenes because the Greenes were under a court order to liquidate everything within 30 days, so there was not enough time to get a survey done. Mr. Pennell testified that he had studied all of the deeds and determined that there was a discrepancy in the calls in his deed. The error first appeared in the transfer from Rollin Sullivan to Jack Greene and then appeared in each deed thereafter.

According to Mr. Pennell, the county had not done any maintenance of the disputed road/private drive since he moved there in 1994 or 1995.

Mr. Pennell pointed out an old iron pin found by Mr. Montoya and used by him in making his property line survey. He asserted that "[t]here's no reason for it to be drove, unless that was pertaining to my property."

On cross-examination, Mr. Pennell admitted that he was not a land surveyor and had no training in surveying or mapping. He acknowledged that surveyor Richard Graves had done some work for him a few years earlier but never completed the boundary survey. Mr. Pennell considered the quality of Graves's work to be poor. Mr. Pennell also testified that he hired Jackie Dillehay to do some surveying work for him and that Mr. Dillehay had been disclosed as his expert witness in the case. Mr. Dillehay had produced two boundary-survey drawings. Mr. Pennell stated that Mr. Dillehay's opinion did not agree with Mr. Montoya's

---

[2]The Douglas tract covered both sides of the Greenes' private driveway on the eastern side of a line extending along the boundary line between the Rittenberry and Pennell properties and extending southward onto the Pennell property.

drawing or Mr. Walker's survey. When asked why he did not hire another surveyor after Mr. Dillehay, Mr. Pennell stated that he "invested $5600 with Jackie Dillehay and I feel like I was handed one of the most negligent or fraudulent surveys that he could have provided."

*Trial court's decision*

The trial court took the matter under advisement and received proposed findings of fact and conclusions of law from both sides. On May 20, 2010, the court entered a memorandum with extensive findings of fact, including the following:

13. Tommy Walker, a Registered Land Surveyor, testified he did a boundary survey for Rittenberry and he said he and Bolinger did research and found a survey made by Rocky Montoya (a Registered Land Surveyor) and one by Howard George. Tommy Walker was a credible witness.

14. Rocky Montoya, a Registered Land Surveyor for 37 years, testified for defendant. Mr. Montoya did not do a boundary survey and the survey documents prepared by Mr. Montoya are not stamped with Mr. Montoya's seal, do not contain a certificate as to category of the survey and do not contain a certificate regarding the rate of precision of the unadjucated [sic] surveys.

15. Rocky Montoya had performed a survey for the Kruegers and that survey plat showed that plaintiff's property is bounded along its Southern border by Ridge Hill Road. That survey also showed a "fence post" as being located at the Southeast corner of plaintiff's property at the margin of Ridge Hill Road.

16. In 2008, defendant secured the service of Jackie Dillehay, a Registered Land Surveyor, to do a boundary survey. Mr. Pennell chose not to call Mr. Dillehay or to present any survey by him.

17. Mr. Pennell also chose not to present any testimony from Richard Graves, Registered Land Surveyor.
. . . .

20. On the 4th day of June, 1985 Jack Greene appeared before the Sumner County Highway Commission presenting a document with signatures of four (4) owners conveying the 50 foot right of way from their land on Ridge Hill Road. The Commission approved the request of Jack Greene and designated Ridge Hill Road from the Davidson County line to the Greene property as a Class C County Road.

-8-

21. The court finds that [the plaintiffs] own the real property described in their warranty deed and shown in the survey of Tommy E. Walker, RLS, dated January 17, 2008.

22. Ridge Hill Road is a public road and is a Class C County Road.

On June 3, 2010, the court entered a final order in favor of the Rittenberrys.

On appeal, the Pennells argue that the trial court erred in crediting the Walker survey, in finding the portion of Ridge Hill Road facing the Rittenberry property to be a public county road, and in failing to properly consider the failure of the predecessor owner of the Rittenberry property owner, Walter Houston, to testify.

STANDARD OF REVIEW

The trial court's findings of fact are reviewed "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. . . ." Tenn. R. App. P. 13(d). We accord great weight to factual findings made by the trial court that rest on determinations of credibility. *Cutler-Hammer v. Crabtree*, 54 S.W.3d 748, 753 (Tenn. 2001); *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999). Review of a question of law is also de novo, but "with no presumption of correctness afforded to the conclusions of the court below." *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002).

ANALYSIS

1.

The Pennells first take issue with the Walker survey, arguing that it is not consistent with earlier deeds, particularly the Rollin Sullivan deed. The crux of the Pennells' argument is as follows:

Plaintiffs' predecessor in title changed the common southeast boundary line between the parties' properties as established by the original John and Mildred Sullivan deed to Rollin Sullivan deed. This was done without the knowledge of the Defendants' predecessor in title, Jack Greene, as indicated by the original common boundary line retained in the Defendant Pennells' deed from Greene.

-9-

We reject this line of reasoning for several reasons. A key finding in this case is that, in accordance with the June 1981 Howard George survey of the Douglas tract, Mr. Houston and Mr. Greene agreed on June 17, 1981, to a boundary line between their two pieces of property. The George survey shows this agreed boundary line beginning in the center of Ridge Hill Drive. This agreement is binding and takes precedence over prior deeds. *See Thornburg v. Chase*, 606 S.W.2d 672, 674 (Tenn. Ct. App. 1980).

Moreover, while disputing the location of the boundary line in the Rittenberry deed and the Walker survey, the Pennells have not offered a boundary survey to show their version of the true boundaries. The Walker survey and the George survey are certified boundary surveys. Mr. Montoya's property line survey is not certified and, as Montoya himself admitted at trial, is not for the purpose of determining boundary lines. While the Pennells were not required to submit a survey, the trial court specifically found Mr. Walker a credible witness. We give great weight to the trial court's factual findings premised upon its credibility determination concerning Mr. Walker. *See Stovall v. Bagsby*, No. M2002-01901-COA-R3-CV, 2003 WL 22768677, at *2 (Tenn. Ct. App. Nov. 24, 2003); *Edwards v. Heckmann*, No. E2002-02292-COA-R3-CV, 2003 WL 21486987, at *4 (Tenn. Ct. App. June 25, 2003); *Mix*, 27 S.W.3d at 514.

The Pennells rely upon the case of *Slack v. Antwine*, No. W2000-00961-COA-R3-CV, 2001 WL 30527, at *7 (Tenn. Ct. App. Jan. 11, 2001), for the proposition that "[a] party may not, by an ex parte survey and marking of lines, fix the boundary of his land differently than that called for in his deed." *Slack* is readily distinguishable from the present case since, in *Slack*, the current deed specifically referenced the description in an earlier deed, but a survey marked the lines based upon the wrong landmark. In our case, the Walker survey is based upon the Rittenberry deed and the George deed, and the Pennells are essentially arguing that it should be based upon their deed, which Mr. Walker found to be erroneous, and earlier deeds. In any event, the 1981 boundary agreement takes precedence over any previous deeds.

The Pennells also argue that the Walker survey is flawed because it relies upon courses and distances in the Rittenberry deed over a natural object–"a drain near a walnut"–referenced in their deed. The following rule concerning the evidence to be considered in determining a boundary line is well-established:

> In determining disputed boundaries resort is to be made first to the natural objects or landmarks, because of their very permanent character. Next, the artificial monuments or marks. Then, the boundary lines of adjacent land owners. And then, the courses and distances.

-10-

*Wood v. Starko*, 197 S.W.3d 255, 258 (Tenn. Ct. App. 2006) (quoting *Thornburg*, 606 S.W.2d at 675). Mr. Walker and Mr. Bollinger testified that they began by looking for monumentation included in the Rittenberry deed as well as surrounding deeds. Mr. Bollinger found a natural monument (a hacked tree) as well as a number of old iron pins, and the location of an old fence post (referenced in the worksheet from the 1999 Montoya survey).[3]

Mr. Walker placed little significance on the Pennell deed because he found that it was a long way from closing and was not reliable. Furthermore, as previously discussed, the 1981 boundary agreement would take precedence over older deeds. The Montoya property line survey carries little weight because it is not a boundary survey, thus we do not know whether the survey would close with the line constructed by Mr. Montoya based upon old deeds.

We do not find that the evidence preponderates against the trial court's decision to credit Mr. Walker's opinion. *See Mix*, 27 S.W.3d at 514 (trier of fact to evaluate evidence and credibility in boundary dispute).[4]

II.

The Pennells next argue that the trial court erred in concluding that the portion of Ridge Hill Road that faces the Rittenberry property is a public county road. They assert that this is their privately-owned drive.

In order to find that the road in question is a public roadway, the court had to determine that the property owners dedicated the land to public use and that the road was accepted for public use. *See Vaughn v. Brewer*, No. E2009-02288-COA-R3-CV, 2010 WL 3307075, at *2 (Tenn. Ct. App. Aug. 23, 2010). To support the trial court's decision that the road in front of their property is a public road, the Rittenberrys rely almost exclusively on the resolution passed by the county highway commission in June 1985 accepting the 50-foot right-of-way for Ridge Hill Road and designating it as a Class C County Road. The real question here is whether the county included in its designation the last portion of the road claimed by the Pennells to be a private drive. The Rittenberrys point out that, when it paved the rest of the road, the county paved the part of the road in front of the Rittenberry property.

---

[3]As to the fence line, this was not discovered by Mr. Walker until after he had done his survey.

[4]We find no merit in the Pennells' assertion that Mr. Walker and Mr. Bollinger erred in failing to notify the Pennells in accordance with Tenn. Code Ann. § 62-18-124(d). The intent of this provision is that a surveyor notify affected adjoining landowners of disputed boundaries or inconsistent deed descriptions. In this case, the Pennells already knew there was a dispute.

There is, however, significant evidence indicating that the portion of the road in front of the Rittenberry property was not designated as a county road. Perhaps most significant is the fact that the Houstons, who owned the property at issue in 1985, did not sign the document signed by property owners to convey the needed right-of-way to the county. This fact suggests that the roadway to be accepted as a county road did not extend to what is now the Rittenberry property. While the county's paving of the disputed stretch of road seems to suggest this portion was included, Ms. Greene testified that her husband obtained the county's agreement to pave that portion of the road, which was their private drive, only once in return for their conveyance of the right-of-way for Ridge Hill Road. The resolution itself expressly applies to the portion of Ridge Hill Road "from Davidson County line back to end which is the Greene property." This description indicates that the county road would end where the Greene property began.[5] Mr. Pennell testified that the county had not maintained the disputed portion of the road since he lived on Ridge Hill Road.

Given the significant evidence indicating that the disputed portion was not made a county road, we conclude that the evidence preponderates against the trial court's finding that it is a county road. We find that the roadway in front of the Rittenberry property is a private drive.

We recognize that the designation of the disputed roadway as a private drive creates a situation in which the lower tract of the Rittenberry property is essentially landlocked. The Rittenberrys are, however, entitled to an easement across the Pennell property to access the public roadway. Should the parties be unable to reach an agreement on the matter, the Rittenberrys may institute proceedings pursuant to Tenn. Code Ann. § 54-14-101 *et seq.* to have a court declare an easement. *See generally Barge v. Sadler*, 70 S.W.3d 683, 687 (Tenn. 2002); *Page v. Fuchs*, No. W1999-00702-COA-R3-CV, 2000 WL 791812, at *4 (Tenn. Ct. App. June 6, 2000).

III.

The final argument raised by the Pennells is that the trial court erred in failing to apply the missing witness rule. We disagree.

The missing witness rule provides that a party's failure to call a witness "gives rise to a permissible inference that the missing witness's testimony would have been unfavorable to the party who failed to call the witness." *Gentry v. Gentry*, No. E2000-02714-COA-R3-CV, 2001 WL 839714, at *4 (Tenn. Ct. App. July 25, 2001) (footnote omitted). In this case,

---

[5]For purposes of this opinion, we need only decide the status of the portion of the road in front of the Rittenberry property.

the Pennells argue that the Rittenberrys' failure to call Mr. Houston as a witness creates an inference that his testimony would have been adverse to the plaintiffs' position.

The missing witness rule generally applies in the context of a jury trial, where the judge instructs the jury as to how they may interpret the evidence or the absence of evidence. *See In re Estate of Hamilton*, No. M2009-01882-COA-R3-CV, 2011 WL 532296, at *6 (Tenn. Ct. App. Feb. 14, 2011). Where applicable, the rule does not create a presumption but merely authorizes a "permissive inference." *In re D.P.M.*, No. M2007-02741-COA-R3-PT, 2008 WL 4693725, at *12 (Tenn. Ct. App. Oct. 23, 2008) (quoting *State v. Francis*, 669 S.W.2d 85, 88 (Tenn. 1984)). The circumstances that allow use of the missing witness rule are as follows:

> (1) the party that failed to produce the witness . . . had it within their power to produce such witness . . . ; (2) the missing witness . . . was under the party's control; (3) the witness . . . was not equally available to the other party; (4) the witness's testimony . . . would not simply be cumulative; (5) a reasonable person in the party's position would have produced the witness . . . if such witness . . . would have been helpful; and (6) the party has not given a reasonable excuse for failing to present the witness . . . .

*Estate of Hamilton*, 2011 WL 532296, at *5 (citing *Elchlepp v. Hatfield*, 294 S.W.3d 146, 154 (Tenn. Ct. App. 2008)). The requirements of the missing witness rule are to be strictly construed. *McKee v. McKee*, No. M2009-01502-COA-R3-CV, 2010 WL 3245246, at *6 (Tenn. Ct. App. Aug. 17, 2010) (citing *Francis*, 669 S.W.2d at 89).

In light of the applicable law, we have determined that the missing witness rule has no application in this non-jury case. Obvious problems include the absence of evidence that Mr. Houston was under the Rittenberrys' control and unavailable to the Pennells to subpoena as a witness.

CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part. Costs of appeal are assessed one-half against the Rittenberrys and one-half against the Pennells. Execution may issue if necessary.

_____

ANDY D. BENNETT, JUDGE

-13-