IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2024 Session

FILED

JAN 24 2025

Clerk of the Appellate Courts
REc'd By _____

**JANETT GALLOWAY v. EARL SCOTT ET AL.**

**Appeal from the Chancery Court for Morgan County**
**No. 19-11          Tom McFarland, Chancellor**

_____

**No. E2023-01666-COA-R3-CV**
_____

In this boundary dispute, the plaintiff brought an action seeking a declaratory judgment to establish the boundary line between the plaintiff's improved real property and the defendants' improved real property. Following a bench trial, during which the court heard expert testimony from two competing surveyors, the trial court declared the property boundary to be established according to the survey prepared by the plaintiff's expert witness. The defendants have appealed. Discerning no reversible error, we affirm. The plaintiff's request for attorney's fees on appeal is denied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Earl Scott, Fairborn, Ohio, Pro Se.[1]

Dale J. Montpelier, Knoxville, Tennessee, for the appellee, Janett Galloway.

**OPINION**

I. Factual and Procedural Background

This case arises from a boundary dispute regarding a shared property line between the parties' adjoining parcels of improved real property located in Morgan County, Tennessee. On March 6, 2019, the plaintiff, Janett Galloway, filed a complaint seeking declaratory judgment regarding placement of the disputed boundary line, naming as defendants Earl Scott and Leisa Scott. Ms. Galloway also requested a restraining order,

_____
[1] Appellant Leisa Scott has filed a *pro se* notice that she has joined in Mr. Scott's appellate brief.

pursuant to Tennessee Rule of Civil Procedure 65.03, prohibiting the Scotts from blocking access to her property. Ms. Galloway averred that a predecessor in title to her property had conveyed to Russell Distributing Gas Company, now Citizens Gas Company, "a right-of-way across the country road to put in a gas line."[2] Ms. Galloway further averred that the Scotts were claiming ownership interest in the country road and that the gas line easement was "underneath the country road that is in dispute" ("the Disputed Area").[3]

In her complaint, Ms. Galloway averred that she had erected a fence on what she believed to be the boundary line in April 2018 and that Mr. Scott had torn down the fence the same day, placing it where he thought the boundary line should be. Ms. Galloway alleged that in January 2019, the Scotts had placed two locked gates across the "country road," blocking access to her property. Moreover, Ms. Galloway asserted that upon her counsel's request for the Scotts to tear down the gates or provide Ms. Galloway with a key, the Scotts refused via communication from their attorney. She also alleged that since refusing to give her a key, Mr. Scott had been "waving his arms and yelling" at Ms. Galloway when she accessed the property and had attached a "No Trespassing" sign to the gate with a pointed message handwritten on it.

On May 20, 2019, the Scotts filed an answer and counter-complaint, averring that the parties possessed conflicting real property surveys. The Scotts requested that the trial court quiet title to the disputed boundary in their favor, and they alleged that Ms. Galloway had trespassed on their land. Ms. Galloway filed an answer to the counter-complaint, denying all substantive allegations. She subsequently filed an *ex parte* motion for a temporary restraining order, alleging that Mr. Scott was coming onto her property that was not in dispute and mowing without her permission. On October 9, 2020, the trial court entered an agreed order mutually restraining the parties from entering onto each other's property and the Disputed Area.

On May 28, 2021, the Scotts filed a motion to amend their answer and counter-complaint, asserting the affirmative defense of adverse possession, pursuant to Tennessee Code Annotated §§ 28-2-103 and -105, and also adding a claim of adverse possession to their counter-complaint. The Scotts moved to name additional parties whose use of an ingress easement could be affected if the Scotts prevailed in this action. In an agreed

---

[2] The lease for the gas line easement, which was presented at trial as part of a stipulated exhibit, indicates that it was conveyed to The Russell Producing Company by Hugh K. Jones, Jr., and Xenia Jones in October 1936.

[3] There was some question throughout the proceedings regarding whether the Disputed Area was a road, a gas line easement, or both. In its final order, the trial court found that the answer to this question was unclear but that based on the evidence presented, "it was likely an old road that later served as a gas easement."

order entered on September 10, 2021, the trial court granted the Scotts' motion to amend their complaint. Woodrow E. Smith, Julia Galloway Smith, and Marsha Ann Stacy Hamby were then joined to the action as interested party defendants. Ms. Galloway subsequently filed a response to the amended counter-complaint.

On September 26, 2023, the trial court conducted a bench trial, during which both Ms. Galloway and the Scotts were represented by counsel. At the outset of trial, the Scotts' counsel announced an agreement to dismiss the Scotts' claim of adverse possession. Three witnesses testified during trial: Adam Leftwich, Ms. Galloway's surveyor; Donna Cantrell, the Scotts' surveyor; and Ms. Scott. The parties stipulated to the exhibits presented at trial, which included: each party's chain of title to the relevant properties; Mr. Leftwich's survey; Ms. Cantrell's survey; two surveys from the Scotts' chain of title (dated 1985 and 2010) that had been prepared by Eugene Olmstead; a survey prepared by Mr. Olmstead of a neighboring property; aerial photographs of the Disputed Area; photographs of the Disputed Area; and a deposition for proof given by Marty Maxfield, a predecessor in title to the Scotts.

Mr. Leftwich's survey placed the Disputed Area within the bounds of Ms. Galloway's tract. Mr. Leftwich testified that he had been able to locate all pins denoting the boundary line except the northwest corner pin. He stated that he had placed a pin marking the northwest corner of the Scotts' property, utilizing the 1985 Olmstead survey, manmade monuments, and the chains of title for both parties. In the 2010 survey, Mr. Olmstead had utilized what he described as an "old road" as one reference point. Mr. Leftwich opined that the "old road" referenced by Mr. Olmstead was the gas line easement. As Mr. Leftwich interpreted the boundary line, the Scotts' property was on the east side of the gas line easement (the Disputed Area).

Ms. Cantrell's survey placed the Disputed Area within the bounds of the Scotts' tract. Ms. Cantrell primarily based her survey on an overlay of a 1951 aerial photograph over the 1985 Olmstead survey. Using this aerial photograph, she opined that the "old road" referenced by Mr. Olmstead in his 2010 survey was separate from and in a different location than the gas line easement. On cross-examination, Ms. Cantrell acknowledged that she had not personally conducted the survey she presented. She testified that her son, with whom she was in business, had completed the survey. Ms. Cantrell had been on the disputed property to take photographs a week prior to trial, but she acknowledged that she had not visited the property prior to her son's having completed the survey.

Ms. Scott's testimony was confined to the period when Mr. Maxfield, whose deposition was presented for proof by agreement, had been living on the property now owned by the Scotts. Mr. Maxfield had initially rented the tract with the boundary at issue from Ms. Scott's parents, Vernon and Jean K. Beasley. In 2010, after Mr. Beasley

- 3 -

had passed away, Mr. Maxfield purchased the tract from Ms. Beasley. In 2014, Mr. Maxfield conveyed the tract to Ms. Scott, who subsequently conveyed it to Mr. Scott and herself as tenants by the entirety. Mr. Maxfield testified in his deposition that prior to conveying the real property to Ms. Scott, it had been his understanding that the "old road" or gas line easement was not part of the tract. He also indicated that Mr. Beasley (Ms. Scott's father) had walked the boundary line of the tract with him. In her testimony, Ms. Scott expressed doubt as to whether her father's health at the time would have allowed him to walk the boundary line with Mr. Maxfield.

The trial court entered a written order on November 8, 2023, finding in favor of Ms. Galloway and incorporating its oral ruling. The court determined that the deeds were "vague and ambiguous and were absolutely no help" in determining the boundary line. The court also stated that due to "numerous discrepancies and errors" in the Olmstead surveys, the court could not rely upon them. Instead, the court based its decision on what it termed "a battle of the experts." The court found Ms. Cantrell to be unsure, hesitant, and evasive when testifying. Conversely, the court determined that Mr. Leftwich's testimony carried a "high level of certainty." The court ordered the boundary line to be established according to Mr. Leftwich's survey. Mr. Scott timely appealed and has proceeded on appeal without benefit of counsel.[4]

## II. Issues Presented

The Scotts have presented three issues on appeal, which are difficult to decipher as discrete legal issues.[5] We discern the Scotts' overarching and dispositive issue to be:

---

[4] Upon an order entered on March 26, 2024, this Court determined that the trial court's final order had not been effectively entered, pursuant to Tennessee Rule of Civil Procedure 58, because it did not include a certificate of service demonstrating that the order had been served upon the Smiths or Ms. Hamby, the other interested parties named in the amended counter-complaint. The trial court subsequently transmitted a supplemental record that included a final order with the appropriate certificate of service. The Smiths and Ms. Hamby are not participating in this appeal.

[5] The Scotts' issues, as stated verbatim, are:

1.      Reliance on Inconsistent Surveys: The trial court's decision, predicated on questionable surveys without regard for physical evidence and historical boundary markers, misapplied legal standards for boundary determination and the possibility that the trial court erred in finding that the plaintiff had established the boundary line between the parties' properties by clear and convincing evidence, based on the unreliable and inconsistent surveys of C. Eugene Olmstead and Adam [Leftwich], and in disregard of the defendants' deed of correction, the physical features of the land, and the historical use of the old road and the old fence as boundary markers[.]

1.   Whether the trial court erred by determining that the disputed boundary line should be set according to the survey produced by Mr. Leftwich.

Ms. Galloway has raised the following additional issues, which we have restated as follows:

2.   Whether the Scotts have failed to preserve the trial court's alleged errors for appeal or have failed to comply with the Tennessee Rules of Appellate Procedure in presenting their appeal.[6]

3.   Whether Ms. Galloway should be awarded attorney's fees on appeal pursuant to Tennessee Code Annotated § 27-1-122.

---

2.   Improper Property Allocation: The award of critical property segments to the plaintiff, ignoring the adverse impact on the appellants and lacking rigorous evidence for adverse possession or prescriptive easement, stands contested. Such as the possibility that the trial court erred in awarding the plaintiff a portion of the defendants' driveway, septic tank, and field lines, without considering the adverse impact on the defendants' use and enjoyment of their property, and without requiring the plaintiff to prove the elements of adverse possession or prescriptive easement.

3.   Denial of Procedural Motions: The court's refusal to consider motions for a more equitable summary judgment, and despite clear evidence conflicts, continues to undermine the judicial process's fairness and equity. Thus furthering possibilities that the trial court erred in denying the defendants' egalitarian judgment. We should consider the fact that there was no genuine issue of material fact, that the plaintiff had failed to prove her case by clear and convincing evidence, and that the verdict was against the weight of the evidence, manifestly unjust, and excessive.

[6] In her appellate brief, Ms. Galloway has labeled her issue regarding the Scotts' presentation of the appeal as a "response" to the Scotts' issues and has placed this response immediately preceding her statement of the issues. Although direct inclusion of the issue in her statement of the issues would have been clearer, taking the placement of Ms. Galloway's response together with her detailed argument in the brief concerning waiver, we determine that she has sufficiently raised the issue of waiver as stated above. See Trezevant v. Trezevant, 696 S.W.3d 527, 531 (Tenn. 2024) ("[W]hen the arguments set forth in an appellate brief fall within the scope of the stated issues, and the issues and argument taken together clearly present the grounds for appellate relief, the reviewing court should review the substantive issues."). Additionally, we note that compliance with the Tennessee Rules of Appellate Procedure is a threshold issue that we may address *sua sponte* even when it is not designated as an issue by a party. See, e.g., Bean v. Bean, 40 S.W.3d 52, 53 (Tenn. Ct. App. 2000); Edmonson v. McCosh, No. E2010-01588-COA-R3-CV, 2012 WL 3861174, at *3 (Tenn. Ct. App. Sept. 6, 2012).

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). "Interpretation of a deed is a question of law," which we review *de novo* with no presumption of correctness. *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005). However, the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

We respect the Scotts' decision to proceed without benefit of counsel. We note that in reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 462 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Waiver

As a threshold issue, Ms. Galloway contends that the Scotts have waived their issues on appeal by failing to comply with Tennessee Rule of Appellate Procedure 27 concerning preparation of an appellate brief. She likewise contends that the Scotts have waived their issues by failing to preserve or cite to facts in the record that would support their allegations of error. *See* Tenn. R. App. P. 13(c) (providing that appellate courts "may consider those facts established by the evidence in the trial court and set forth in the record . . . ."). Ms. Galloway further posits that the Scotts have waived theories and arguments they have presented on appeal by failing to raise them in the trial court. The

Scotts have not filed a reply brief and therefore have not responded to Ms. Galloway's waiver arguments.

Tennessee Rule of Appellate Procedure 27 provides in pertinent part:

(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

 (1) A table of contents, with references to the pages in the brief;

 (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

 * * *

 (4) A statement of the issues presented for review;

 (5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

 (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

 (7) An argument, which may be preceded by a summary of argument, setting forth:

  (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

  (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)

-7-

(8)    A short conclusion, stating the precise relief sought.

Similarly, Tennessee Court of Appeals Rule 6 provides in pertinent part:

(a)    Written argument in regard to each issue on appeal shall contain:

    (1)    A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

    (2)    A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

    (3)    A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

    (4)    A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b)    No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

We recognize that the Scotts are *pro se* litigants and appreciate their decision to proceed self-represented. However, Mr. Scott's appellate brief contains numerous deficiencies with regard to the above-listed requirements. The brief has no table of authorities. *See* Tenn. R. App. P. 27(a)(2). The brief includes a section captioned, "Overview of the Case," which it appears is intended to serve as a statement of the case. Nonetheless, this section is deficient because it does not delineate the procedural history ("course of proceedings") but instead summarizes Mr. Scott's issues on appeal. *See* Tenn. R. App. P. 27(a)(5). The appellate brief includes a "Statement of Facts," but this section consists of two paragraphs, labeled as "Issue 1" and "Issue 2," that are argumentative and

contain no references to the appellate record. *See* Tenn. R. App. 27(a)(6). As to the requirements for argument, Mr. Scott's appellate brief includes a section he has entitled, "Legal Arguments," with a separate section entitled, "Case Law." These sections, taken together, provide some citations to legal authorities but are insufficient to fully satisfy the argument requirements because they provide no citations to the appellate record, lack the required standard of review, and at several points consist of what appear to be block quotes from an unidentified source or sources, often expounding on theories that were not presented in the pleadings or at trial in the instant action. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. App. R. 6.

As this Court has previously explained regarding deficiencies in an appellate brief filed by a *pro se* litigant:

> While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)), "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000) (citing *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194-95 (D.C. Cir. 1983)). *Pro se* litigants must comply with the same substantive and procedural law to which represented parties must adhere. *Hodges*, 43 S.W.3d at 920-21.

> \* \* \*

> Our Courts have "routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as described by Rule 27(a)(7) constitutes a waiver of the issue[s] [raised]." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). In *Bean*, we went on to hold that "an issue is waived where it is simply raised without any argument regarding its merits." *Id.* at 56; *see also Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure of a party to cite to any authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue). As we stated in *Newcomb*, a "skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Newcomb*, 222 S.W.3d at 400. It is not the function of this Court to verify unsupported allegations in a party's brief or to research and construct the party's argument. *Bean*, 40 S.W.3d at 56.

Despite the fact that [the appellant's] brief is woefully inadequate, there are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits.

*Chiozza v. Chiozza*, 315 S.W.3d 482, 487-489 (Tenn. Ct. App. 2009) (footnote omitted). Here, although Mr. Scott's brief fails to fully satisfy the requirements of Tennessee Rule of Appellate Procedure 27 and Tennessee Court of Appeals Rule 6, we determine that this is an appropriate case in which to exercise our discretion to waive the briefing requirements and adjudicate the dispositive issue of this appeal on the merits. *See* Tenn. R. App. P. 2.

However, upon careful review, we determine that the Scotts have waived some theories and arguments because they were not raised in the trial court. On appeal, the Scotts contend that the trial court's "award of a portion of [the Scotts'] property to [Ms. Galloway] was unsupported by substantial evidence for adverse possession or prescriptive easement." The Scotts couch this argument as though Ms. Galloway had succeeded via a theory of adverse possession or prescriptive easement. To clarify, the trial court declared the parties' common boundary line to be where the court determined it to be based on the evidence presented at trial. The court did not "award" one party's property to another. Moreover, neither of the theories relied upon by the Scotts was presented at trial. This Court "is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are *presented and decided* in the trial courts, and a record thereof preserved as prescribed in the statutes and Rules of this Court." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31-32 (Tenn. 2001) (quoting *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976)) (emphasis added in *E.N.R.*).

The Scotts initially raised adverse possession as both an affirmative defense and a counterclaim in their amended answer and counter-complaint. However, at trial, the Scotts' counsel announced the following:

[T]here was a counter-complaint for adverse possession of that area and we're going to ask – we're going to have in our order today will be an agreement that that matter will be dismissed. So the only matter that the court has before it is declaring the boundary line based on the proof that's in the record.

The trial court memorialized this agreement in its final order, expressly dismissing the Scotts' claim of adverse possession. Furthermore, the Scotts presented no defense based on adverse possession at trial. The Scotts have thereby waived any issue regarding adverse possession on appeal. *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006)

("Issues not raised in the trial court cannot be raised for the first time on appeal."); *In re Aliyah C.*, 604 S.W.3d 417, 419 (Tenn. Ct. App. 2019) ("[I]ssues not raised at trial are generally considered waived on appeal.").

Furthermore, the appellate record demonstrates that the theory of prescriptive easement was never mentioned by either party in a pleading filed with the trial court or during trial. Accordingly, the Scotts' argument regarding prescriptive easement is waived on appeal. *See id.* Similarly, Mr. Scott's appellate brief includes a long paragraph describing the requirements for dedicating real property for public use. No issue regarding public use was raised before the trial court in the instant action, and any such issue is therefore waived. *See id.* Likewise, the Scotts posit that the trial court erred by ignoring evidence regarding the adverse impact the court's decision would have on them. No such evidence or argument concerning the impact on the Scotts was presented during trial, rendering this argument waived as well. *See id.*

Procedurally, the Scotts assert that the trial court erred by declining to grant summary judgment or a directed verdict in their favor and by declining to order a new trial. However, no motions for summary judgment, a directed verdict, or a new trial were ever filed in the trial court. Accordingly, the Scotts have waived these procedural arguments also. *See id.* We now proceed to review the Scotts' surviving and dispositive issue of whether the trial court erred in declaring the parties' boundary line in accord with Mr. Leftwich's survey.

## V. Declaration of Boundary Line

The Scotts assert that the trial court erred by declaring the parties' common boundary line to be as described in Mr. Leftwich's survey. They contend that the trial court's decision was "predicated on questionable surveys without regard for physical evidence and historical boundary markers." In particular, the Scotts posit that the Olmstead and Leftwich surveys were "unreliable and inconsistent" and that the court disregarded the Scotts' "deed of correction, the physical features of the land, and the historical use of the old road and the old fence as boundary markers." However, in his appellate brief, Mr. Scott does not identify at what points in the record these alleged errors occurred. According to the trial court's final order, the court considered all of the deeds in the Galloway chain of title and the Scott chain of title, which included a May 1976 "Deed of Correction" amending some measurements in a previous deed. However, the court agreed with a point that was undisputed at trial: the property descriptions in the parties' respective chains of title were vague and of very little help in determining the boundary line at issue. The court found that because the written deed descriptions were "vague and ambiguous," a comparison of the two expert surveyors' testimonies was determinative.

- 11 -

Regarding review of the evidence in a boundary line dispute, this Court has previously explained:

> "In resolving a boundary line dispute, it is the role of the trier of fact to evaluate all the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999) (citing *Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. Ct. App. 1983)). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161 (Tenn. Ct. App. Mar. 31, 2008). Due to the fact-intensive nature of boundary line disputes, the trial court is best suited to assess the credibility of the witnesses and its credibility determinations are binding on this court unless the evidence preponderates against them. *Id.* at *34. When the trial court makes a determination accepting one surveyor's findings over that of another, that same deference requires this court to accept the trial court's findings. *Id.*
>
> The following rule has been adopted in Tennessee:
>
> > The construction of deed and other instruments and documents and their legal effect as to boundaries is a question of law. What boundaries the grant or deed refers to is a question of law; where those boundaries are on the face of the earth is a question of fact. If, therefore, the evidence concerning the location of the true boundary line between adjacent landowners is conflicting, that issue is one of fact unless the legal construction of the deed or grant is such that the boundary is determined as a matter of law.
>
> 12 Am. Jur. 2d *Boundaries* § 121 (1997) (footnotes omitted). We therefore review the trial court's finding as to the true location of the [parties'] boundary line as a finding of fact that is entitled to the presumption of correctness. Tenn. R. App. P. 13(d). Thus, we will not disturb the trial court's judgment unless the evidence preponderates against it. *Id.*

*Hong v. Foust*, No. E2011-00138-COA-R3-CV, 2012 WL 388448, at *5 (Tenn. Ct. App. Feb. 8, 2012); *see Conder v. Salyers*, 421 S.W.3d 589, 592 (Tenn. Ct. App. 2013).

The trial court declared the parties' common boundary line to be as follows:

[T]he common boundary line shared between the property of the Plaintiff, Janet[t] Galloway, specifically Tract 2 in the Plaintiff's Deed of record in Book H-9, Page 845 in the Morgan County Register's Office, and entered as a part of Stipulated Trial Exhibit No. 1, and the property of the Defendant, Leisa Scott and Earl Scott, specifically Tract 1 (or the first parcel of land described) found in that Deed of record in Record Book 193, Page 302 in the Morgan County Register's Office, and entered as a part of Trial Exhibit No. 2, shall be as depicted on the Survey of Adam Leftwich TN RLS No. 3078, dated January 31, 2023, and entered as Trial Exhibits 3A, 3B and 9, a copy of which may be found of record in Plat Cabinet 1, Page 1610, in the Morgan County Register's Office, to which reference is hereby made for a more particular metes and bounds description.

In so concluding, the trial court made the following pertinent findings of fact:

The deeds referenced in this matter for both [Ms. Galloway] and [the Scotts] contain vague and ambiguous legal descriptions, providing no assistance to the court in determining the rightful common boundary line of the parties.

The court finds that it cannot solely rely upon the Olmstead surveys, presented as Exhibits in this cause, due to numerous discrepancies and errors found in each of them.

[Ms. Galloway's] expert witness, Surveyor Adam Leftwich testified regarding a pin set in the northwest corner of [the Scotts'] property which matches the distances and locations found in the 1985 Survey performed by Eugene Olmstead, entered as Exhibit No. 6. Mr. Leftwich testified that he was able to locate the northwest corner of [the Scotts'] property utilizing the pin referenced in Trial Exhibit No. 6 and the distances of the western boundary of [the Scotts'] property, shared with [Ms. Galloway], as depicted in that survey which are almost identical to where Mr. Leftwich located the northwest corner of [the Scotts'] property and the shared common boundary line between the parties on his survey. The Court recognizes his testimony as carrying a high level of certainty. Mr. Leftwich also referenced man-made monuments found on the ground in this area of [the] northwest corner of [Ms. Galloway's] property which were considered in his survey work.

Surveyor Donna Cantrell, [the Scotts']$^{[7]}$ expert witness, testified as to the survey she signed that was entered as Trial Exhibit No. 4. However, Ms. Cantrell testified that she did not do the survey, that her son and helper with her company did the work.

The testimony of [the Scotts'] surveyor, Donna Cantrell, was evasive, even on direct examination, and was found to be less convincing and less reliable than that of Mr. Leftwich.

Given the weight of evidence and the credibility of the expert witnesses, the boundary in dispute is hereby established as detailed in Mr. Leftwich's survey as presented in Exhibits 3A, 3B, and Exhibit 9.

(Paragraph numbering omitted.)

Thus, the trial court weighed the credibility of the two experts and found Mr. Leftwich to be more credible than Ms. Cantrell. Upon careful review, we discern no reason to disturb the trial court's credibility finding in weighing the two surveyors' testimonies. *See Hong*, 2012 WL 388448, at *5 ("When the trial court makes a determination accepting one surveyor's findings over that of another, that same deference requires this court to accept the trial court's findings."). As this Court has previously established, when determining the location of a boundary line in dispute, the trial court should "look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property." *Mix v. Miller*, 27 S.W.3d 508, 513 (Tenn. Ct. App. 1999).

In this case, the trial court explained in detail its reasoning for giving more credence to Mr. Leftwich's testimony and survey, noting Mr. Leftwich's testimony that he had been "able to locate the northwest corner of [the Scotts'] property utilizing the pin referenced in Trial Exhibit No. 6." Mr. Leftwich also testified that he had physically found all of the pins except the northwest corner pin. When the trial court questioned Mr. Leftwich regarding why he set the northwest corner pin where he did, Mr. Leftwich responded: "Because it matched from the distances. We found these three pins along this line. They matched the distances from the Olmstead survey." As the trial court further noted, "Mr. Leftwich also referenced man-made monuments found on the ground in this area of [the] northwest corner of [Ms. Galloway's] property which were considered in his survey work." In contrast, Ms. Cantrell had not personally conducted the survey about which she testified. According to her testimony, Ms. Cantrell relied in

---

[7] The trial court inadvertently identified Ms. Cantrell as "the Plaintiffs' expert witness" and "the Plaintiff's surveyor," respectively, in this paragraph and the following paragraph of the order.

great part on a 1951 aerial photograph she had overlaid on an Olmstead survey to opine that the gas line easement had not been the "old road" referred to in the 2010 Olmstead survey.

The trial court considered the testimony of the witnesses and the totality of the evidence presented when concluding that the parties' common boundary line is as described in Mr. Leftwich's survey. Based on our thorough review of the record, we determine that the evidence does not preponderate against the trial court's conclusion regarding the location of the boundary line or ownership of the Disputed Area. We therefore affirm the ruling of the trial court.

## VI. Attorney's Fees on Appeal

Ms. Galloway contends that the Scotts' appeal is frivolous such that she should be awarded attorney's fees on appeal pursuant to Tennessee Code Annotated § 27-1-122 (West 1975 to current), which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

This Court has previously explained:

> Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.
>
> A frivolous appeal is one that is devoid of merit or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted).

We have noted deficiencies in Mr. Scott's brief and the waiver of several theories and arguments he has attempted to raise on appeal. However, considering the Scotts' *pro*

*se* status and our review of the dispositive issue, we determine that this appeal was not so devoid of merit as to be deemed frivolous. Therefore, we exercise our discretion to deny Ms. Galloway's request for attorney's fees on appeal.

## VII. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. We remand this case to the trial court for enforcement of the judgment and collection of costs below. Ms. Galloway's request for an award of attorney's fees on appeal is denied. Costs on appeal are assessed to the appellants, Earl Scott and Leisa Scott.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE